1  Robert F. Semmer (State Bar No. 102576)
   Cathleen G. Fitch (State Bar No. 95302)
2  **COUGHLAN, SEMMER & LIPMAN, LLP**
   501 West Broadway, Suite 400
3  San Diego, CA 92101
   (619) 232-0800
4  (619) 232-0107 (Fax)

5

   **Attorneys for** Defendant SURGICAL CARE
6  AFFILIATES, LLC a Delaware Limited Liability corporation

7

8

9                    UNITED STATES DISTRICT COURT

10                  SOUTHERN DISTRICT OF CALIFORNIA

11  DAVID J. CHAO, an individual,            CASE NO. '07 CV 2408 DMS WMc

12                     Plaintiff,            **NOTICE TO ADVERSE PARTY OF
                                             REMOVAL TO THE UNITED STATES
13         vs.                               DISTRICT COURT PURSUANT TO 28
                                             U.S.C. § 1441(b)**
14  HEALTHSOUTH CORPORATION, a
    Delaware corporation;
15  SHC SAN DIEGO, INC., a Georgia
    corporation;
16  SHC MANAGEMENT COMPANY, a
    Georgia corporation;
17  SURGICAL HEALTH CORPORATION, a
    Delaware corporation;
18  HEALTHSOUTH SURGERY CENTERS-
    WEST, INC., a Delaware corporation;
19  SURGICAL CARE AFFILIATES, LLC a
    Delaware Limited Liability corporation;
20  ARTHROSCOPIC & LASER SURGERY
    CENTER OF SAN DIEGO, L.P., and
21  DOES 1 through 100, inclusively,

22                     Defendants.

23         TO PLAINTIFF DAVID CHAO AND HIS ATTORNEY OF RECORD:

24         PLEASE TAKE NOTICE that a Notice of Removal of this action to the United States

25  District Court for the Southern District of California, located at 880 Front Street, Suite 4290, San

26  Diego, California 92101,  was filed by Defendant Surgical Care Affiliates LLC on December 24,

27  2007.

28

                                        - 1 -

FILED
DEC 2 6 2007
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1    Attached hereto and marked as Exhibit "1" is a true and correct copy of said Notice.

2

3    DATED:  December 21, 2007              COUGHLAN, SEMMER & LIPMAN, LLP

4

5

6    By _____
                                       Robert F.  Semmer, Esq.
7                                        Cathleen G. Fitch, Esq.
                                         Attorneys for Defendant SURGICAL CARE
8                                        AFFILIATES, LLC

9

     @PFDesktop\::ODMA/PCDOCS/CSL/65240/1
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. _____
Notice to Adverse Party of Removal to District Court

**EXHIBIT 1**

1  Robert F. Semmer (State Bar No. 102576)
   Cathleen G. Fitch (State Bar No. 95302)
2  **COUGHLAN, SEMMER & LIPMAN, LLP**
   501 West Broadway, Suite 400
3  San Diego, CA 92101
   (619) 232-0800
4  (619) 232-0107 (Fax)

5

   **Attorneys for** Defendant SURGICAL CARE
6  AFFILIATES, LLC

7

8

   ### UNITED STATES DISTRICT COURT
9
   ### SOUTHERN DISTRICT OF CALIFORNIA
10

11  DAVID J. CHAO, an individual,                    CASE NO.

12                          Plaintiff,              **NOTICE OF REMOVAL OF CIVIL
                                                     ACTION TO UNITED STATES
13          vs.                                      DISTRICT COURT PURSUANT TO 28
                                                     U.S.C. § 1441(b)**
14  HEALTHSOUTH CORPORATION, a
    Delaware corporation;
15  SHC SAN DIEGO, INC., a Georgia
    corporation;
16  SHC MANAGEMENT COMPANY, a
    Georgia corporation;
17  SURGICAL HEALTH CORPORATION, a
    Delaware corporation;
18  HEALTHSOUTH SURGERY CENTERS-
    WEST, INC., a Delaware corporation;
19  SURGICAL CARE AFFILIATES, LLC a
    Delaware Limited Liability corporation;
20  ARTHROSCOPIC & LASER SURGERY
    CENTER OF SAN DIEGO, L.P., and
21  DOES 1 through 100, inclusively,

22                          Defendants.

23          TO THE CLERK AND JUDGES OF THE UNITED STATES DISTRICT COURT FOR

24  THE SOUTHERN DISTRICT OF CALIFORNIA:

25          PLEASE TAKE NOTICE that Defendant Surgical Care Affiliates, LLC (hereinafter

26  "SCA"), by and through its attorneys Coughlan, Semmer & Lipman, LLP, hereby remove this

27  pending action from the Superior Court of the State of California for the County of San Diego,

28  Central Division, to the United States District Court for the Southern District of California on the

                                        - 1 -

following grounds:

1.      On or about September 19, 2007, there was filed in the Superior Court of the State of California for the County of San Diego, Central Division, a Summons and Complaint bearing Case No. 37-2007-00075329-CU-BC-CTL, a true and correct copy of which is attached hereto as Exhibit "A."

2.      A copy of said Summons and Complaint was served on SCA on November 26, 2007, by mail on an out-of-state person pursuant to Code of Civil Procedure §415.40.

3.      This action by Plaintiff David Chao ("Chao") alleges that SCA engaged in unlawful and unfair business practices, refused to perform a contract to sell an ownership interest in a partnership and interfered with Dr. Chao's economic advantage in connection with the sale of the ownership interest. Chao also alleges that other defendants mismanaged and defrauded a partnership in which Chao claims to hold an 18% interest. The Complaint seeks damages for breach of contract, negligence, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraud and interference with contract and prospective economic advantage. Chao further seeks compensation for alleged damage to his reputation and attorneys' fees and costs incurred. The amount of damages sought are unspecified but exceed $75,000. The entity which Chao claims he was prevented from acquiring is a local surgery center which is expected to generate profits well in excess of $75,000 per year and thus, is valued in excess of $75,000.

4.      This is a civil action over which this Court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332 and is subject to removal pursuant to 28 U.S.C. § 1441(b).

5.      Upon information and belief, Plaintiff Chao was at all times relevant hereto and still is an individual residing in San Diego, California.

6.      Defendant SCA is and at all times relevant hereto has been a corporation or limited liability company duly organized and existing under the laws of the state of Delaware having its principal place of business in Alabama.

7.      Defendant HEALTHSOUTH CORPORATION, is and at all times relevant hereto has been a corporation duly organized and existing under the laws of the state of Delaware, having its principal place of business in Alabama. Said Defendant has purportedly been served

- 2 -

1    on or about November 16, 2007 and joins in this Notice of Removal.

2      8. Prior to June 27, 2007, Defendant SHC SAN DIEGO, INC., was at all times

3    relevant hereto a corporation duly organized and existing under the laws of the state of Georgia,

4    having its principal place of business in Alabama.  On June 27, 2007, SHC SAN DIEGO, INC.

5    was converted to a limited liability company organized and existing under the laws of the state of

6    Delaware, with its principal place of business in Alabama.  It is now named SHC San Diego,

7    LLC.  On information and belief, said Defendant has not been served but upon proper service of

8    the Summons and Complaint, will join in this Notice of Removal.

9      9. At all time relevant hereto until about December 26, 2002, Defendant SHC

10   MANAGEMENT COMPANY, was a corporation duly organized and existing under the laws of

11   the state of Georgia, having its principal place of business in Alabama.  On or about December

12   26, 2002, SHC MANAGEMENT COMPANY transferred all of its assets, debts, obligations and

13   liabilities to its parent company, Surgical Health Corporation, and SHC MANAGEMENT

14   COMPANY was subsequently voluntarily dissolved.  On information and belief, said Defendant

15   has not been served but upon proper service of the Summons and Complaint, will join in this

16   Notice of Removal.

17     10. Prior to June 25, 2007, Defendant SURGICAL HEALTH CORPORATION was

18   at all times relevant hereto, a corporation duly organized and existing under the laws of the state

19   of Delaware, having its principal place of business in Alabama.  On June 25, 2007, SURGICAL

20   HEALTH CORPORATION was converted to a limited liability company organized and existing

21   under the laws of the state of Delaware, with its principal place of business in Alabama.  It is

22   now named Surgical Health, LLC.  On information and belief, said Defendant has not been

23   served but upon proper service of the Summons and Complaint, will join in this Notice of

24   Removal.

25     11. Prior to June 25, 2007, Defendant HEALTHSOUTH SURGERY CENTERS-

26   WEST, INC., was at all times relevant hereto, a corporation duly organized and existing under

27   the laws of the state of Delaware, having its principal place of business in Alabama.  On June 25,

28   2007, HEALTHSOUTH SURGERY CENTERS-WEST, INC. was converted to a limited

- 3 -

Case No. _____
Notice of Removal

1    liability company organized and existing under the laws of the state of Delaware, with its
2    principal place of business in Alabama. It is now named Surgery Centers-West Holdings, LLC.
3    On information and belief, said Defendant has not been served but upon proper service of the
4    Summons and Complaint, will join in this Notice of Removal.

5          12.    Defendant ARTHROSCOPIC & LASER SURGERY CENTER OF SAN DIEGO,
6    L.P., is a Georgia limited partnership which is alleged to have its principal place of business in
7    San Diego, California. Said Defendant was served on November 26, 2007 by mail to an out-of-
8    state person pursuant to Code of Civil Procedure §415.40. Chao is a limited partner of said
9    partnership. Chao alleges in the Complaint that he sues derivatively on behalf of said partnership
10   Defendant. Chao alleges no wrongdoing by said partnership Defendant and seeks no affirmative
11   relief against it. Consequently, said partnership Defendant is a nominal defendant and is aligned
12   with Chao. Accordingly, its citizenship is not properly considered for diversity purposes. See,
13   Exhibit A at ¶¶ 1, 9, 10, 14.

14         13.    Defendants identified as "DOES 1 through 100" in the Complaint are merely
15   fictitious parties against whom no cause of action can be validly alleged. Upon information and
16   belief, no fictitiously designated defendant has been served with process.

17         14.    WHEREFORE, Defendant prays that the above-entitled action now pending in the
18   Superior Court of the State of California for the County of San Diego, Central Division, be
19   removed to this Court pursuant to 28 U.S.C. § 1441(b).

20

21   DATED: December 21, 2007         Respectfully submitted,

22                             **COUGHLAN, SEMMER & LIPMAN, LLP**

23

24

25                   By                       
                  Robert F. Semmer, Esq.
26                     Cathleen G. Fitch, Esq.
                  Attorneys for Defendant SURGICAL CARE
27                     AFFILIATES, LLC

28   @PFDesktop\::ODMA/PCDOCS/CSL/65239/1

Case No. _____
Notice of Removal

**EXHIBIT A**

EXHIBIT A

MARK S. BAGULA [CSB No. 171141]
DAVINA A. B. BLOOM [CSB No. 236850]
DANIEL W. WATKINS [CSB No. 128849]
THE WATKINS FIRM
A Professional Corporation
4520 Executive Drive
San Diego, CA 92121
(858) 535-1511
(858) 535-1581 [Facsimile]

Attorneys for Plaintiff, DAVID J. CHAO

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO- CENTRAL DIVISION

| | |
|---|---|
| DAVID J. CHAO, an individual,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>HEALTHSOUTH CORPORATION, a Delaware corporation; SHC SAN DIEGO, INC., a Georgia corporation; SHC MANAGEMENT COMPANY, a Georgia corporation; SURGICAL HEALTH CORPORATION, a Delaware corporation; HEALTHSOUTH SURGERY CENTERS-WEST, INC., a Delaware corporation; SURGICAL CARE AFFILIATES, LLC, a Delaware Limited Liability corporation; ARTHROSCOPIC & LASER SURGERY CENTER OF SAN DIEGO, L.P., and DOES 1 through 100, inclusively,<br><br>　　　　　Defendants. | CASE NO:　37-2007-00075329-CU-BC-CTL<br><br>COMPLAINT FOR:<br>1.　Breach of Contract - Mismanagement<br>2.　Breach of Contract - Failure to Sell Shares<br>3.　Gross Negligence<br>4.　Breach of the Covenant of Good Faith and Fair Dealing<br>5.　Breach of Fiduciary Duty<br>6.　Judicial Dissolution and Accounting<br>7.　Constructive Trust<br>8.　Fraudulent Inducement<br>9.　Fraud and Deceit-Negligent Misrepresentation<br>10.　Fraud and Deceit-Intentional Misrepresentation<br>11.　Failure to Disclose and/or Concealment of Material Facts<br>12.　Constructive Fraud<br>13.　Violation of Business and Professional Code §17200 - Unfair Business Practices<br>14.　Injunction<br>15.　Specific Performance<br>16.　Intentional Interference With Contract<br>17.　Intentional Interference With Prospective Economic Advantage |

*COMPLAINT*

Chao v. HealthSouth Corporation, et al.

1

## GENERAL ALLEGATIONS

Plaintiff complains and alleges, individually and derivatively, as follows:

1.    Plaintiff CHAO is and at all times herein mentioned was an individual residing in the State of California, County of San Diego and was at all times a Limited Partner in a Partnership established with Defendants, which is called Arthroscopic & Laser Surgery Center of San Diego, L.P. (hereinafter "Partnership.") The Partnership is and at all times herein mentioned a corporation with its principal place of business in the State of California, County of San Diego, and was at all times authorized to do business in the State of California, County of San Diego.

2.    Plaintiff is informed and believes and thereon alleges that Defendant SHC SAN DIEGO, INC. (hereinafter "SHC SD") is and at all times herein mentioned was incorporated in the state of Georgia and conducting business in the County of San Diego, in the State of California, and was the General Partner in the Partnership. SHC SD is sued herein both individually and as General Partner of the Partnership.

3.    Plaintiff is informed and believes and thereon alleges that Defendant HEALTHSOUTH CORPORATION (hereinafter "HealthSouth" or "HS") is and at all times herein mentioned was incorporated in the state of Delaware and conducting business in the County of San Diego, in the State of California.

4.    Plaintiff is informed and believes and thereon alleges that Defendant SURGICAL HEALTH CORPORATION (hereinafter "SHC") is and at all times herein mentioned was incorporated in the state of Delaware and conducting business in the County of San Diego, in the State of California.

5.    Plaintiff is informed and believes and thereon alleges that Defendant HEALTHSOUTH SURGERY CENTERS-WEST, INC. (hereinafter "Surgery Centers-West") is and at all times herein mentioned was incorporated in the state of Delaware and conducting business in the County of San Diego, in the State of California.

6.    Plaintiff is informed and believes and thereon alleges that Defendant SURGICAL CARE AFFILIATES, LLC (hereinafter "SCA') is and at all times herein mentioned was incorporated in the state of Delaware and conducting business in the County of San Diego, in the State of California.

///

7.    Plaintiff is ignorant of the true names and capacities of Defendants sued in this complaint as Does 1 through 100, inclusive, and therefore sues such Defendants by these fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this complaint, and that Plaintiff's injuries as alleged in this complaint were proximately caused by each of Defendants' actions.

8.    Plaintiff is informed and believes and thereon alleges that at all times mentioned in this complaint each of the Defendants was the agent and/or employee of each of the remaining Defendants, and in doing the things alleged in this Complaint, was acting within the course and scope of this agency and employment.

9.    To the extent the duties were owed to and rights were held by the Partnership, Plaintiff is suing derivatively on behalf of the Partnership. Plaintiff recognizes that, at the time of filing of the Complaint, Defendants had been divested of the powers and authority it maintained as the partner responsible for managing the day-to-day Partnership activities, but out of an abundance of caution, since derivative claims must be brought as derivative claims (see Everest Investors 8 v. McNeil Partners (2003) 114 Cal.App.4th 411), and in recognition of the fact that Defendants did and still do have rights both as a limited and general partner in the Partnership. Plaintiff did not make any effort to secure action from Defendants in prosecuting this action because any such effort would have been futile, in that Defendants were involved with the wrongdoing complained of and the officers of Defendants are also the same officers and directors of the other HS Defendants, and thus would not have taken action against themselves or against the Partnership to the extent it would negatively affect any of the Defendants.

Nevertheless, Plaintiff informed Defendants of the ultimate facts of the causes of action herein alleged against Defendants.

10.    At all times herein mentioned, and at the time of the transactions complained of herein, Plaintiff was a Limited Partner of record of the Partnership.

11.    One of the entities comprising the Partnership is the General Partner, Defendant SHC SD. Plaintiff is informed and believes SHC SD is a wholly owned subsidiary of Defendant SHC, which in turn is a wholly-owned subsidiary of Defendant HealthSouth, or is in some practical fashion essentially

1    a subsidiary of HealthSouth. SHC SD, that is, is a "dummy" corporation. SHC SD and HealthSouth

2    share the same principal business office, which is located at One HealthSouth Parkway, Birmingham,

3    Alabama, 35243. HealthSouth manages the business and affairs of the Partnership. The General

4    Partner purportedly owns a 51% interest in the Partnership.

5          12.    Plaintiff is informed and believes and thereon allege that at all times mentioned in this

6    complaint each Defendant was the agent, alter ego, and/or employee of each of the other Defendants,

7    and acted, during times relevant herein, within the course and scope of this agency and employment.

8    Essentially, there is no difference between the Defendant corporations. Plaintiff alleges that all

9    Defendants are the same, that there is no independence amongst them, and that all of the Defendants are

10    all part of HS. Moreover, given HS' past, HS has used several of these "dummy" corporations to help

11    with its fraudulent behavior. Meaning, in order to be able to participate in the fraud that HS has been

12    found guilty of in the past, HS needs several of these "corporations" to act as its alter egos in order to

13    be able to move assets into and out of multiple accounts for financial gain. HS was represented to be

14    a corporation of good standing that could be trusted to manage the finances of the partnership, when in

15    fact the entire HS operation was a criminal scheme to defraud its business partners charging for items

16    not properly chargeable. HS falsified the Partnership's accounting to enrich it and its executives

17    personally.

18          13.    It is alleged that HS is the alter ego of SHC SD, SHC MC, SHC, HSSC-W, and SCA

19    (hereinafter collectively referred to as "HEALTHSOUTH AFFILIATES" or "HS AFFILIATES.") It is

20    alleged on information and belief that many, if not all, of the following factors are satisfied to indicate

21    that any liability found in this action against HS should also result in personal judgment against HS

22    AFFILIATES: 1) there was a commingling of funds or assets between HS AFFILIATES and HS and

23    affiliate operations; 2) HS treated HS AFFILIATES assets as their own; 3) there was a failure by HS and

24    HS AFFILIATES to obtain authority to issue stock or in fact issue the same; 4) there was a holding out

25    by HS and HS AFFILIATES that they are personally liable for corporate debts; 5) there was a failure

26    by HS and HS AFFILIATES to maintain minutes or adequate corporate records; 6) there was improper

27    domination and control of HS by HS AFFILIATES, and vice-versa; 7) another corporation or entity

28    used the same business location, or employees of HS and HS AFFILIATES; 8) HS and HS AFFILIATES

*COMPLAINT*
**Chao v. HealthSouth Corporation, et al.**

1  were formed without sufficient capitalization; 9) HS and HS AFFILIATES were a mere shell, or conduit

2  for a single venture or the business of another entity including affiliate operations; 10) the ownership,

3  business activities, or management of HS and HS AFFILIATES were concealed or misrepresented;

4  11) there was a disregard of legal formalities; 12) HS and HS AFFILIATES were used to procure labor

5  or merchandise for another entity; 13) there was a diversion of assets from HS to HS AFFILIATES, and

6  vice versa, in detriment of creditors including affiliate operations; 14) HS and HS AFFILIATES were,

7  and are, being used as a shield to avoid liability, or a subterfuge for illegal transactions, including

8  violation of tax laws; and 15) HS and HS AFFILIATES were formed and used to transfer to it the

9  liability of another entity. The above factors indicate that there is such a unity of interest and ownership

10  that the individuality, or separateness, of HS AFFILIATES and HS has ceased; and the facts are such

11  that an adherence to the fiction of the separate existence of the corporation would, under these particular

12  circumstances, sanction a fraud or promote injustice. Alternatively, the corporate officers and directors

13  of HS, by the above acts, engaged in and participated in a fraud which should result in personal liability

14  for the acts of HS and HS AFFILIATES. Plaintiff alleges that HS completely controlled, dominated,

15  managed, and operated each of the Defendants and intermingled the assets of each for the convenience

16  of HS. Plaintiff is informed and believes that all HS ownership interests were sold to SCA.

17    14.    The remaining relevant partners are the Limited Partner doctors such as Plaintiff.

18  Plaintiff owns 18% of the Partnership by way of his Limited Partner status.

19    15.    The Partnership Agreement provides that SHC SD shall enter into a Management

20  Agreement with SHC Management Company ("SHC MC"), a Georgia corporation, awarding 6% of

21  Partnership net revenues to SHC MC for assisting the General Partner with the day-to-day management

22  of the Partnership. Specifically, section 9.03 of the Limited Partnership Agreement states: "The General

23  Partner is specifically authorized to enter into a management agreement with the Management Company

24  under which the Management Company will be responsible for assisting the General Partner with the

25  day-to-day management of the Partnership. The Partnership will pay an annual management fee to the

26  Management Company equal to six percent (6%) of Net Revenues. Such management fee shall be paid

27  monthly based on the Net Revenues of the immediately preceding month."

28  ///

16.    Plaintiff is informed and believes and thereon alleges that Defendant SHC MC is and at all times herein mentioned was incorporated in the state of Georgia and conducting business in the County of San Diego, in the State of California.

17.    There exists, and at all times mentioned there existed, a unity of interest and ownership between Defendants such that any individuality and separateness between Defendants has ceased, and Defendants are the alter ego of each other in that HealthSouth owns 100% of each of the other Defendant corporations, and HealthSouth officers and directors were in control of each of those Defendant corporations. Communications with the individuals who represent themselves as those charged with managing the Partnership, has always taken place with those associated with and/or employed by HealthSouth, and forms associated with managing the Partnership have HealthSouth insignia on them.

18.    SHC SD is, and at all times herein mentioned was, so inadequately capitalized that, compared with the business to be done by SHC SD and the risks of loss, its capitalization was illusory.

19.    SHC SD is, and at all times herein mentioned was, the alter ego of HealthSouth and SHC and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between the Defendants such that any separateness has ceased to exist, in that HealthSouth used assets of the corporation for its own uses, causing assets of the corporation to be transferred to HS without adequate consideration. Defendants also withdrew funds from the partnership's bank accounts for its own use.

20.    SHC SD is, and at all times herein mentioned was, the alter ego of HealthSouth and SHC and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between the Defendants such that any separateness has ceased to exist, in that HealthSouth completely controlled, dominated, managed, and operated both corporate defendants and intermingled the assets of each to suit the convenience of HealthSouth.

21.    SHC SD is, and at all times herein mentioned was, controlled, dominated, and operated by HealthSouth as its individual business and alter ego, in that Plaintiff is informed and believes that the activities and business of SHC SD were carried out without the holding of directors' or shareholders' meetings, and no records or minutes of any corporate proceedings were maintained.

22.    Defendants SHC SD, SHC, SHC MC, and HSSC-W, and SCA are and at all times herein mentioned were, a mere shell and sham without capital, assets, or perhaps even stock or stockholders.

1   Each was conceived, intended, and used by HealthSouth as a device to avoid individual liability and for

2   the purpose of substituting a financially insolvent corporation in the place of HealthSouth.

3         23.    Adherence to the fiction of the separate existence of HealthSouth as an entity distinct

4   from the other Defendants would permit an abuse of the corporate privilege and would sanction fraud

5   and promote injustice in that HealthSouth improperly and fraudulently caused large sums of money to

6   be withdrawn from the funds of SHC SD and the Partnership while at the same time committing massive

7   accounting fraud and breaking numerous laws. Substantial Partnership assets accumulated during the

8   life of the Partnership, through and by way of the accounting fraud described herein and other methods,

9   are believed to be in the possession of HealthSouth. Shielding HealthSouth from liability would allow

10   HealthSouth to avoid responsibility for its fraudulent actions toward the Partnership and the public.

11         24.    As the General Partner, SHC SD managed the funds of the Partnership. Using its powers

12   as General Partner of the Partnership, SHC SD deposited funds daily into the Partnership account. That

13   account was swept on a daily basis of all funds, which were deposited into an account with Defendants.

14   The funds were then transferred to HealthSouth, where the Partnership's and approximately 200 other

15   surgical center's accounts were handled and processed by HealthSouth, and commingled together.

16         25.    Healthsouth officers have historically and continue to be hopelessly intermingled with

17   officers and board members of sham corporation subsidiaries, including SHC SD. Plaintiff is informed

18   and believes that SHC SD has listed as its Chief Executive Officer (hereinafter "CEO"), Secretary, and

19   Chief Financial Officer (hereinafter "CFO"), Jay Grinney, Gregory L. Doody, and John Workman,

20   respectively. Both HealthSouth and Surgery Centers-West have the same exact individuals listed in the

21   same exact positions for those organizations. Individuals acting as those charged with the management

22   of the Partnership have always represented themselves as part of HealthSouth.

23         26.    Richard Scrushy, who recently served as the CEO of HealthSouth, in November 2002,

24   also served as the Chairman of the Board and Director of an SHC SD type subsidiary, HVPG of

25   California, Inc. ("HVPG.") At the same time, the President and Director of HVPG was William T.

26   Owens, who was also President and Chief Operating Office (hereinafter "COO") of HealthSouth. The

27   Vice President, Secretary, and Director of HVPG was Brandon O. Hale, who was also the Senior Vice

28   President–Administration and Secretary of HealthSouth. Hale was also HealthSouth's Corporate

*COMPLAINT*
**Chao v. HealthSouth Corporation, et al.**

1    Compliance Officer.    Larry D. Taylor was a Vice President of HVPG, and also the

2    President–Ambulatory Services of HealthSouth. Patrick A. Foster was a Vice President of HVPG and

3    was also President–Inpatient Services of HealthSouth.  Malcolm E. McVay was Vice President and

4    Treasurer of HVPG and was also the Executive Vice President and Treasurer of HealthSouth.

5         27.    More recently, HealthSouth and most of the aforementioned officers, including then CEO

6    Richard Scrushy and CFO William Owens, were accused of and sued for massive accounting fraud by

7    the Securities Exchange Commission (hereinafter "SEC.") Specifically, Richard Scrushy is the founder

8    of HealthSouth, and was at all relevant times Chairman, Chief Executive Officer (except from August

9    27, 2002 to January 6, 2003), and a director of the Company until March 20, 2003, when he was placed

10   on administrative leave.  William Owens was the President and Chief Operating Officer (except from

11   August 28, 2002 to January 6, 2003, when he was Chief Executive Officer) of HealthSouth from August

12   2001 through January 2003, Chief Financial Officer from February 2000 through August 2001, and

13   Senior Vice President - Finance and Controller from March 1998 through February 2000. On January

14   6, 2003, Owens resumed the position of Chief Financial Officer until March 20, 2003, when he and

15   Scrushy were placed on administrative leave.  Owens was also a certified public accountant.

16        28.    Many HealthSouth employees admitted criminal complicity in accounting abuses.

17   William Owens pled guilty to several criminal counts including wire fraud, securities fraud, and filing

18   false financial certifications for HealthSouth.   Another HealthSouth CFO, Weston Smith, also pled

19   guilty to several criminal charges stemming from the accounting practices at HealthSouth.  In fact, at

20   the time these guilty pleas were being entered, all of the former CFO's of HealthSouth had confessed

21   to participating in the accounting scam.

22        29.    Specifically:

23   Emery W. Harris held various positions in HealthSouth's Accounting Department between 1992

24   and March 2000.  Between March 2000 and March 2003, he was Group Vice President of Accounting

25   and Assistant Controller.  On March 31, 2003, Harris pled guilty to charges of conspiracy to commit

26   wire fraud and securities fraud and filing false records.

27        Angela Ayers was, between 1994 and 2002, Accounting Manager and Director of Accounting.

28   From 2002 to March of 2003, Ayers was Assistant Vice President of the Accounting Department.  On

1   April 3, 2003, Ayers pled guilty to conspiracy to commit wire fraud, securities fraud and making false
2   books and records.

3       Kenneth Livesay was, between 1992 and 1999, Vice President of Finance and Assistant
4   Controller, and from 1999 to April 3, 2003, he was Chief Information Officer. On April 3, 2003,
5   Livesay pled guilty to charges of falsifying financial information and conspiracy to commit wire fraud
6   and securities fraud.

7       Cathy C. Edwards worked in HealthSouth's Accounting Department between 1993 and 1999.
8   Between 1999 and April 3, 2004, Edwards was a Vice President of Accounting. On April 3, 2003,
9   Edwards pled guilty to conspiracy to commit wire fraud, securities fraud and making false books and
10  records.

11      Rebecca Kay Morgan worked in HealthSouth's Accounting Department between 1987 and 1999.
12  Between 1999 and April 3, 2003, Morgan was Group Vice President of Accounting. On April 3, 2003,
13  Morgan pled guilty to conspiracy to commit wire fraud, securities fraud and making false books and
14  records.

15      Virginia B. Valentine worked in HealthSouth's Accounting Department between 1995 and 2000.
16  Between 2000 and April 3, 2003, Valentine was Assistant Vice President of Accounting. On April 3,
17  2003, Valentine pled guilty to conspiracy to commit wire fraud, securities fraud and making false books
18  and records.

19      Richard E. Botts was, between May 1998 and July 2003, Senior Vice President for the Tax
20  Department. On July 31, 2003, Botts pled guilty to charges of conspiracy to commit securities fraud,
21  falsifying books and mail fraud.

22      Will Hicks was, between March 1999 and 2003, Vice President of Investments. On July 3, 2003,
23  Hicks pled guilty to charges of conspiracy to make false statements to auditors and maintaining false
24  business records.

25      Jason M. Brown held various positions with HealthSouth. Between 1997 and May 2000, Brown
26  was with the Treasury Department, and between May 2000 and July 2003, he was Vice President of
27  Finance. On July 8, 2003, Brown pled guilty to charges of conspiracy to commit securities fraud,
28  falsifying books and records and wire fraud.

1    Russell H. Maddox was President of HealthSouth's Imaging Center. Maddox attended or gave

2    presentations at meetings of HealthSouth's Board of Directors.

3    Larry D. Taylor was President of HealthSouth Ambulatory Services - East. Taylor attended or

4    gave presentations at meetings of HealthSouth's Board of Directors.

5    Catherine Fowler was a former cash manager and Vice President in HealthSouth's Treasury

6    Department. On November 24, 2003, Fowler pled guilty to charges of conspiracy to commit wire fraud,

7    securities fraud and making false entries in books and records and false certification of financial

8    information filed with the Securities and Exchange Commissions. On or about the end of every month,

9    Defendants and specifically the staff accountants prepared fraudulent financial statements that were

10   provided to Plaintiff that intentionally overstated the value of the Partnership's assets and income and

11   deliberately misstated that those values complied with generally accepted accounting principles. Murphy

12   v. BDO Siedman, LLP (2003) 113 Cal.App.4th 687, 692. Furthermore, Defendants made adjustments

13   to contractual allowances between the first and second monthly accounting "runs" with respect to the

14   partnership. Defendants would provide the center with monthly accounting statements in a first run and

15   then manipulate the numbers for a second run, and fraudulently represented to Plaintiff that the second

16   run numbers were accurate. Fraudulent entries also included entries for bonuses to employees that were

17   incorrect, and bonuses recorded that were not received at all. To conceal the accounting fraud,

18   Defendants made false journal entries of fixed assets that were designed to avoid audit detection by not

19   exceeding a certain dollar amount.

20   30.    Further, trading of HealthSouth stocks and bonds was halted due to the above-referenced

21   facts. The financial statements of HealthSouth overstated assets by the billions and HealthSouth found

22   itself in dire financial trouble. At least fourteen HealthSouth executives pled guilty to accounting fraud,

23   including the above-referenced executives. Said guilty pleas and related documents are collectively

24   attached hereto as **Exhibit 1,** and are incorporated as if set forth fully herein.

25   31.    On or about May 28, 2004, a Report of the Special Audit Review Committee of the Board

26   of Directors of HealthSouth Corporation (hereinafter referred to as "The Report") was filed with the

27   United States Securities and Exchange Commission. The Report indicates that, HealthSouth employees

28   engaged in corporate accounting fraud. The findings of the Committee include, *inter alia*, improper

---

*COMPLAINT*
**Chao v. HealthSouth Corporation, et al.**

1  adjustments to income and assets, recording improper entries, fraudulent acquisition accounting,

2  fraudulent bonus accounting, fraudulent investment account and fraudulent accounting practices

3  involving Source Medical accounts. Plaintiff is informed and believes that Scrushy, the previous CEO

4  of HealthSouth, developed the SIS software which was later sold by Scrushy to Source Medical.

5  Additionally, Scrushy and/or the affiliates of HS owned as much as one-third (1/3) of Source Medical.

6  The Committee also found additional questionable accounting practices by HealthSouth. Those issues

7  include, *inter alia*, Capitalization of Expenses, "Borrowed Depreciation," Assets of Closed Facilities,

8  Lease Accounting, Audit Adjustments and Employee and Other Loans.   Finally, the Committee

9  discovered intentional misreporting of financial results of <u>local facilities</u>. This fraud included, but was

10  not necessarily limited to, facility contractual adjustments.  Specifically, the Report indicated that

11  adjustments to contractual allowances were made between the First Runs and the Second Runs. These

12  same adjustments to contractual allowances in the First and Second Runs occurred with respect to the

13  Partnership. Meaning, Defendants would provide the center with monthly accounting statements in a

14  first run and then manipulate the numbers for a second run, and fraudulently represented to Plaintiff that

15  the second run numbers were accurate.  Fraudulent entries also included entries for bonuses to

16  employees that were incorrect, and bonuses recorded that were not received at all.  To conceal the

17  accounting fraud, HealthSouth made false journal entries of fixed assets that were designed to avoid

18  audit detection by not exceeding a certain dollar amount.  Plaintiff is informed and believes that

19  sometimes even third runs were made.  The Report by the Committee is attached hereto as **Exhibit 2,**

20  and is incorporated as if set forth fully herein.

21       32.    The Partnership was also required to purchase computers at more than double the

22  competitive market value from a company which is owned, controlled, or related to Mr. Scrushy.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

*COMPLAINT*
**Chao v. HealthSouth Corporation, et al.**

33.    Plaintiff is informed and believes that HealthSouth executives made adjustments to allowances, via contractual adjustments with health-care insurance providers, thereby improving earnings. They then booked corresponding entries on the balance sheet as assets. Plaintiff is also informed and believes that Defendants wrongfully double charged the Partnership for management fees. In 1999, HealthSouth should have reported a loss of $191 million, but instead reported a profit of $230 million. To conceal this fraud, HealthSouth made false journal entries of fixed assets that were designed to avoid audit detection by not exceeding a certain dollar amount. Improper entries were spread far and wide in tiny pieces across balance sheets. By 2000, the entries became more sophisticated as HealthSouth perfected its fraud. By mid 2002, HealthSouth's total assets were overstated by $1.5 billion, and income was overstated by $150 million. The balance sheet in HealthSouth's 10-Q report filed for the 2nd quarter of 2002 overstated property, plant, and equipment by $1 billion and cash was overstated by more than $300 million. Plaintiff is informed and believes that Defendants have committed numerous violations of law with respect to the operation of the Partnership.

34.    The SEC had halted trading of HealthSouth stock citing materially misleading information in the marketplace. HealthSouth was removed from the S&P 500. NASDAQ had halted trading of HealthSouth bonds. HealthSouth's credit rating had been downgraded. S&P's credit rating for HealthSouth had been at 'substantial risk of default.' In the face of all of this information, SHC SD still sent bank deposits on a daily basis to Healthsouth, and failed to conduct any investigation as to how these accounting practices and criminal acts affected the security of the Partnership's assets and cash, as well as future business and business reputation of the Partnership. The General Partner SHC SD did absolutely nothing because SHC SD officers and directors are in name only and work directly for Healthsouth.

35.    Plaintiff recently began to wonder whether the aforementioned fraudulent and deceitful activities were affecting the Partnership center (and thus his personal reputation as the primary doctor associated with said center), and upon coming to believe that this was indeed the case, and becoming concerned with control of center activities and direction generally, he approached SHC SD and Defendants, with an ultimatum to either sell him enough shares to increase his ownership to a controlling 80%, or continue in the Partnership without Plaintiff as a Limited Partner doctor working at the center.

*COMPLAINT*
Chao v. HealthSouth Corporation, et al.

36.     Defendants agreed to alternatively sell him either all of their shares, or enough of their shares necessary to increase his shares to 80%, pursuant to the market share rates defined in the relevant Partnership Agreement and amendments thereto, and the precedents set upon valuing such earlier sales between Partnership partners. Upon Plaintiff's request, Defendants further agreed to refrain from renegotiating the Partnership center's lease with landlord, as landlord was requesting Plaintiff personally guarantee same, and Plaintiff believed the terms of the lease were too onerous to be in the best interest of the Partnership.

37.     Plaintiff agreed to and did remain working at the Partnership surgery center in reliance on Defendants' promise to sell him the aforementioned shares, and the 50% of the Partnership center business Plaintiff contributes has continued to line Partnership coffers. Defendants, meanwhile, notwithstanding an understanding to the contrary, renegotiated the center's lease at terms that even Defendants acknowledged reflect a loss of $500,000.00 relative to the previous lease's fiscal terms. The leases terms represent and reflect, that is, over-market pricing, the benefit of which Plaintiff is informed and believes runs to Defendants rather than the Partnership or Partners.

38.     Defendants also reneged on the contract to sell him said shares, and wrongly and deceitfully informed Plaintiff that the Medicare anti-kickback statute, 42 U.S.C. §1320a-7b(b), prohibited them from transferring same - that such action would take them out of compliance with healthcare laws. The anti-kickback statute establishes criminal penalties for entities offering or receiving remuneration in order to induce business that is reimbursed by Medicare. An essential element of the offer or payment to be scrutinized under the statute, is that it be designed to induce Medicare or Medicaid patient referrals. United States of America v. McClatchey, 217 F.3d 823 (10th Cir. 2000.) As a matter of law, neither Defendants' nor Plaintiff's *level* of ownership in the Partnership could conceivably run afoul of the anti-kickback statue. Moreover, and also as a matter of law, a market-value transfer of said shares would no more implicate the statute, than beginning the partnership with each party having those later-considered relative share percentages. Section 1320a-7b(b)(3)(A) of the statute clearly establishes as much. Defendants' assertions to the contrary were fraudulent, deceitful, misleading, grossly negligent, designed to induce Plaintiff to rely on their implied "expertise" regarding healthcare law and organizational matters, and to remain in the Partnership as a doctor working at the

1  center at his current level of ownership and control, and notwithstanding his concerns for his personal

2  reputation, the reputation of his personal practice, and/or his disproportionate and to a very real extent

3  unrewarded contribution to the Partnership.

4       39.    Plaintiff has filed this Complaint after he (1) clearly identified the widespread fraud

5  committed by Defendants, (2) began to realize and believe, based on recent behavior of and interactions

6  with the Defendants, that he and the Partnership had indeed suffered damages stemming from the

7  aforementioned activities of the Defendants, in that the Partnership assets have been placed at grave risk

8  during the life of the Partnership, (3) began to realize and believe both his and the Partnership's

9  reputations had been damaged, (4) began to realize and believe, based on recent behavior of and

10  interactions with the Defendants, that Defendants never had any intention of selling him the shares

11  promised to increase his ownership and control over the center's activities, and (5) began to realize and

12  believe that Defendants' explanations for reneging on their promise to sell him shares and increase his

13  control and ownership, were a fraudulent misuse of federal healthcare laws designed to redirect

14  Plaintiff's attention and focus away from their breach.

15       40.    Additionally, due to SHC SD's unique position of insight and knowledge into the

16  fraudulent, dishonest, and criminal business practices of HealthSouth, SHC SD's habit and practice of

17  depositing funds into accounts, which were then transferred to the possession, use, and control of

18  HealthSouth and Defendants' other violations of law constitute gross negligence, wilful misconduct,

19  fraud, breach of contract, and breach of fiduciary duties.

20       41.    Without Plaintiff's cooperation or knowledge, Plaintiff is informed and believes that all

21  of the above referenced illegal, immoral, corrupt and improper conduct has been conducted at Plaintiff's

22  place of business and has directly affected Plaintiff's business and individual reputation.

23       42.    Plaintiff is informed and believes that the complained of conduct began as early as

24  1996 and has continued to the present. However, Plaintiff only recently became aware of these problems

25  just prior to filing this Complaint.

26  ///

27  ///

28  ///

*COMPLAINT*
Chao v. HealthSouth Corporation, et al.

I.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT - MISMANAGEMENT

**(Against Defendants SHC SD, SHC MC, HS, SHC, and HSSC-W)**

43.    Plaintiff re-alleges and incorporates by reference all relevant paragraphs as though fully set forth herein.

44.    On or about January 18, 1996, SHC SD and Plaintiff entered into a written Limited Partnership Agreement with each other to form and operate a center such as the Partnership. The Partnership Agreement and amendments thereto are attached hereto as **Exhibit 3**, and are incorporated fully herein. On or around January 1999, a First Amendment to the Limited Partnership Agreement was created. Although this First Amendment was signed, it was undated. On or about July 3, 2002, an Amendment to the Limited Partnership Agreement was created. This Amendment was signed by the same person, and who signed on behalf of the General Partner SHC SD and on behalf of the Limited Partners (by SHC SD, as attorney-in-fact for all of the Limited Partners.)

45.    The Partnership Agreement provides, in Article VI, that the General Partner, Defendant SHC SD, has "full, exclusive and complete discretion in the management and control of the Partnership and will make all decision affecting the Partnership's Business and affairs."

46.    The Partnership Agreement further provides, in Article IX, § 9.03, that the General Partner was authorized to hire Defendant SHC MC pursuant to a Management Agreement, that made SHC MC "responsible for assisting the General Partner with the day-to-day management of the Partnership, in exchange for 6% of the Partnership's net revenues."

47.    At the time Plaintiff and Defendants entered their Agreement to operate the Partnership, Plaintiff is informed and believes that SHC SD and SHC MD were owned by HealthSouth, or that they were acquired by HealthSouth or a related entity soon thereafter.

48.    At some point in time, Plaintiff is informed and believes that Defendant SHC acquired and held ownership in or of Defendants SHC SD and SHC MD.

49.    In or about June of 1995, SHC was acquired by HealthSouth.

///

---

*COMPLAINT*
**Chao v. HealthSouth Corporation, et al.**

50.    Plaintiff has performed all conditions, covenants, and promises required to be performed on his part in accordance with the terms and conditions of the Partnership Agreement, and continues to do so.

51.    At all relevant times, Plaintiff paid a monthly management fee equal to 6% of Partnership net revenues.  Attached hereto as **Exhibit "4,"** is a true and correct copy of a document circulated by HealthSouth entitled HealthSouth Surgery Center Management Fee.  Plaintiff believes this document establishes the bare minimum Defendants agreed to prior to entering into the agreement.  Defendants were bound to it, and were required to perform those services in exchange for the monthly management fee they were collecting from Plaintiff.

52.    Notwithstanding the Management Agreement and payments thereon, the Partnership has been charged for wage transfers to regional marketing representatives for the San Diego area, and for other individuals who worked on behalf of, and for the sole benefit of Defendants.

53.    Defendants breached the terms of the Partnership and Management Agreements when they charged the Partnership for the wage transfers of regional marketing representatives, and for other individuals who worked on behalf of, and for the sole benefit of Defendants, in connection with the aforementioned management responsibilities owed to the Partnership in exchange for the monthly management fee collected from the Partnership.  Plaintiff was told this fee was to include all HS employees.

54.    Plaintiff is informed and believes that the Partnership was charged for wage transfers to Nicole Martin, marketing representative for the San Diego Region, Viva Shamman, Ms. Martin's successor and for Mary Jane Lewis, yet another marketing representative. Defendants also breached the Partnership agreement when it charged Plaintiff for the wage transfers of Nicole Martin, Viva Shamman and Mary Jane Lewis, over and above the agreed management fee.

55.    As a proximate result of Defendants' actions, Plaintiff has suffered damages in that Plaintiff was doubled charged for marketing through the six percent (6%) management fee, in addition to the charges for wage transfers to marketing personnel (in an amount to be determined at trial.)

56.    Plaintiff was individually harmed by Defendants' collective above-described actions, in that his personal reputation and name are (substantially more than any other Limited Partner),

*COMPLAINT*
**Chao v. HealthSouth Corporation, et al.**

1 | inextricably bound to the name and reputation of the center generally. Moreover, Defendants, through

2 | negotiations with Plaintiff directly and alone, guaranteed that Partnership lease renegotiations would not

3 | move forward without Plaintiff's full participation and acceptance of the terms. This agreement too, was

4 | breached, as explained above.

5 |      57.    As a proximate result of Defendants' actions, Plaintiff has suffered damages in that

6 | Defendants breached the Partnership and Management Agreements when the Partnership was doubled

7 | charged for marketing, accounting and other operational expenses (through the management fee), in

8 | addition to the aforementioned charges for wage transfers (in an amount to be determined at trial.)

9 | Defendants' actions also proximately resulted in damages suffered by Plaintiff, in that Defendants

10 | breached their agreement not to renegotiate the lease without his participation and acceptance of terms,

11 | in an amount to be determined at trial.

12 |      58.    As a further proximate result of Defendants' actions, Plaintiff has suffered damages

13 | in that the Partnership assets have been placed at grave risk, the Partnership has been burdened with

14 | onerous lease terms that harm Plaintiff, to the benefit of other partners. Plaintiff has been wrongfully

15 | saddled with the General Partner's financial oversight obligations, his reputation and the Partnership's

16 | reputation and viability have been placed at grave risk. Plaintiff has also been forced to expend

17 | significant resources to protect his investments and rights.

18 |      59.    Plaintiff seeks injunctive relief pursuant to CCP §525, et al. preventing SHC SD from

19 | making any further Partnership funds available to the possession, use, or control of HealthSouth, SHC,

20 | SHC MC, Surgery Centers-West, or any of their affiliates, and an order pursuant to CCP §572, et al. to

21 | place Partnership funds not already secured into accounts controlled by, accessible to, and for the benefit

22 | of only the Partnership. Plaintiff will suffer immediate and irreparable harm if this relief is not granted.

23 | Plaintiff also seeks damages in an amount yet to be determined.

24 | ///

25 | ///

26 | ///

27 | ///

28 | ///

## II.

## SECOND CAUSE OF ACTION

### BREACH OF CONTRACT - FAILURE TO HONOR AGREEMENT TO SELL SHARES

#### (Against Defendants SHC SD, SHC MC, HS, SHC, and HSSC-W)

60.   Plaintiff re-alleges and incorporates by reference all relevant paragraphs as though fully set forth herein.

61.   On or about March 2007, SHC SD and Plaintiff entered into an agreement for Defendants to transfer, at the fair market value defined in the Partnership Agreement and/or established by precedent during recent sales between Partnership partners, alternatively, either the number of shares necessary to increase Plaintiff's ownership in the Partnership to 80% ("Sales Agreement"), or all of Defendants' interest in the Partnership.

62.   Plaintiff has performed all conditions, covenants, and promises required to be performed on his part, in accordance with the terms and conditions of the Sales Agreement, in that he has continued to work for the center with the understanding, and in reliance upon Defendants' promise that said transfer would occur and that control and stabilization of his reputation and practice would follow.

63.   Defendants have declined to perform on conditions, covenants and promises required to be performed on their part, in accordance with the terms and conditions of the Sales Agreement, in that they have refused to sell said shares, and insist they later learned such a transfer would be violative of 42 U.S.C. §1320a-7b (b) (the "Statute.")

64.   The Statute simply establishes criminal penalties for offering or receiving remuneration in order to induce business that is reimbursed by Medicare, and an essential element of the offer, request, or payment to be scrutinized under the statute, is that it be designed to induce Medicare or Medicaid patient referrals. United States of America v. McClatchey, 217 F.3d 823 (10th Cir. 2000).

65.   The first two subsections and heart of the Statute basically provide as follows:

(1)(A): one cannot ask for or accept payment of any kind from anyone for bringing federal healthcare patients to them.
(1)(B): one cannot ask for or accept payment of any kind from anyone for purchasing any federal healthcare related product.
(2)(A): one cannot offer to or pay anyone to bring federal healthcare patients to them.
(2)(B): one cannot offer to or pay anyone for the act of purchasing a federal healthcare related product.

*COMPLAINT*

Chao v. HealthSouth Corporation, et al.

66.   Defendants' reliance on the Statute must not have been based on any analysis thereof. They are presumably suggesting section (1)(A) would have applied to the stock transfer, as the doctor had indicated he will be forced to disassociate himself from Partnership elements damaging his practice and reputation unless he is sold a controlling share.  The first of the Statute's remaining sections (which are all exceptions to the above cited four basic rules) robs Defendants of the ability to make any such argument, as the exchange (sale of shares) would have been at market rate.  There would be no built-in gain to the doctor - no conceivable "payment" for continuing to utilize the Partnership's center to service his patients.  Plaintiff, in purchasing additional shares in the Partnership, would in essence be paying a pre-defined market price for a pro-rata share of the present and future value of his own patients.  The following three paraphrased exceptions to the four basic above-cited rules evidence that, irrespective of the way Plaintiff-doctor's relationship with Defendants might ultimately be defined by a court, the Statute was, as a matter of law, never intended to interfere with transactions like the Sales Agreement Defendants are seeking to avoid:

(3)(A): there is no problem if the transaction is a fair market exchange;

(3)(B): bona fide fair market employee/employer relationships are presumed valid; and

(3)(C): transactions with vendors are valid by default if (i) there's a contract and (ii) the appropriate disclosures are made.

67.   Defendants' reliance on the statute was never based on any real analysis of same, but was simply a ploy designed to discourage Plaintiff from insisting that Defendants honor the Sales Agreement.

68.   Each of the other Defendants is also liable under this cause of action due to their status as alter egos.

69.   As a proximate result of Defendants' actions Plaintiff has suffered damages in that Plaintiff has remained out of control of his individual practice, his individual reputation, the Partnership he would otherwise have had control of, and has further suffered damages in that the Partnership assets have continued to be placed at grave risk, the Partnership's reputation and viability have been placed at grave risk, income has been lost and Plaintiff has been forced to incur substantial expenses in order to attempt to secure his assets.

///

*COMPLAINT*
Chao v. HealthSouth Corporation, et al.

70.    Plaintiff seeks injunctive relief pursuant to CCP §525, et al. preventing SHC SD from making any further Partnership funds available to the possession, use, or control of Defendants and/or their affiliates, and an order pursuant to CCP §572, et al. to place Partnership funds into accounts controlled by, accessible to, and for the benefit of only the Partnership. Plaintiff will suffer immediate and irreparable harm if this relief is not granted. Plaintiff also seeks damages in an amount yet to be determined.

### III.

### THIRD CAUSE OF ACTION

### GROSS NEGLIGENCE

### (Against Defendants SHC SD, SHC MC, HS, SHC, and HSSC-W)

71.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

72.    Defendants owed a duty of care to its co-partner to refrain from engaging in grossly negligent behavior, reckless conduct, intentional misconduct, or a knowing violation of law in conducting Partnership business, and in actions associated with the Partnership shares Sales Agreement.

73.    Defendants breached these duties to Plaintiff by engaging in the conduct described above including, but not limited to, placing Partnership assets in the possession, use, and control of HealthSouth which was known to Defendants to engage in fraudulent, dishonest, and criminal business activities. Defendants knew or should have known that placing Partnership assets in the possession, use, and control of HealthSouth would constitute an unacceptable risk to those assets. Such action on the part of Defendants constitutes gross negligence, reckless conduct, intentional misconduct, a knowing violation of the law, and failed to exercise even scant care. Such behavior was an extreme departure from the ordinary standard of care. Furthermore, each Defendant owed a duty to Plaintiff as each was the alter ego of each other.

74.    Defendants breached their duties to Plaintiff in presenting Plaintiff with HealthSouth's fraudulent annual and quarterly reports. Defendants further charged Plaintiff for excessive insurance coverage (through a company associated with Defendants) at excessive cost to the Partnership center. Defendants breached their duties to Plaintiff by debiting Partnership accounts for the salaries of certain

1   regional employees. Defendants concealed these wrongful debits through methods such as inserting

2   regional non-clinical staff salaries among lengthy lists of local clinical staff wages, or by wrongfully

3   labeling non-clinical staff wage transfers as clinical wage transfers. Defendants breached their duties

4   by way of their fraudulent negotiations with Plaintiff regarding the Sales Agreement, and in falsely

5   relying on federal healthcare laws as justification of breaching that Sales Agreement.

6       75.   As a proximate result of Defendants' actions, Plaintiff has suffered damages in an amount

7   to be determined at trial.

8       76.   As a proximate result of Defendants' actions, Plaintiff has suffered damages in that

9   Plaintiff has remained out of control of his individual practice, his individual reputation, the Partnership

10   he would otherwise have had control of, and has further suffered damages in that the Partnership assets

11   have continued to be placed at grave risk, the Partnership's reputation and viability have been placed at

12   grave risk, income has been lost and Plaintiff has been forced to incur substantial expenses in order to

13   attempt to secure his assets.

14       77.   Plaintiff seeks injunctive relief pursuant to CCP §525, et al. preventing SHC SD from

15   making any further Partnership funds available to the possession, use, or control of Defendants and/or

16   their affiliates, and an order pursuant to CCP §572, et al. to place Partnership funds into accounts

17   controlled by, accessible to, and for the benefit of only the Partnership. Plaintiff will suffer immediate

18   and irreparable harm if these orders are not granted. Plaintiff also seeks damages in an amount yet to

19   be determined.

20       78.   Defendants' conduct was and is willful, malicious, despicable, and intentionally

21   fraudulent, thereby warranting the imposition of punitive and exemplary damages. Plaintiff prays that

22   the Court will impose punitive and exemplary damages on Defendants in amounts sufficient to punish

23   them and deter other such conduct in the future.

24   ///

25   ///

26   ///

27   ///

28   ///

## IV.

## FOURTH CAUSE OF ACTION

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

#### (Against Defendants SHC SD, SHC MC, HS, SHC, and HSSC-W)

79. Plaintiff re-alleges and incorporates by reference all relevant paragraphs as though fully set forth herein.

80. Defendants represented to Plaintiff that at all times they would act in good faith and fair dealing with the Partnership, and Defendants represented to Plaintiff that they would do the same with respect to the Sales Agreement. Defendants have breached those obligations by participating in the actions described herein.

81. Defendants, by virtue of their possession, use, and control of Partnership funds, and by their status as alter egos of each other, promised and represented to the Plaintiffs that at all times it would act in good faith and fair dealing with Plaintiff. Defendants breached those obligations by participating in the actions as stated herein. Defendants interfered with Plaintiff's right to receive the benefits of the Partnership Agreement and the Sales Agreement.

82. As a proximate result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial.

83. As a proximate result of Defendants' actions, Plaintiff has suffered damages in that Plaintiff has remained out of control of his individual practice, his individual reputation, the Partnership he would otherwise have had control of, and has further suffered damages in that the Partnership assets have continued to be placed at grave risk. The Partnership's reputation and viability have also been placed at grave risk, income has been lost, and Plaintiff has been forced to incur substantial expenses in order to attempt to secure his assets.

///

///

///

///

///

84. Plaintiff seeks injunctive relief pursuant to CCP §525, et al. preventing SHC SD from making any further Partnership funds available to the possession, use, or control of Defendants and/or their affiliates, and an order pursuant to CCP §572, et al. to place Partnership funds into accounts controlled by, accessible to, and for the benefit of only the Partnership. Plaintiff will suffer immediate and irreparable harm if these orders are not granted. Plaintiff also seeks damages in an amount yet to be determined.

85. Defendants' conduct was and is willful, malicious, despicable, and intentionally fraudulent, thereby warranting the imposition of punitive and exemplary damages. Plaintiff prays that the Court will impose punitive and exemplary damages on Defendants in amounts sufficient to punish them and deter other such conduct in the future.

## X.

## FIFTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

### (Against Defendants SHC SD, SHC MC, HS, SHC, and HSSC-W)

86. Plaintiff re-alleges and incorporates by reference all relevant paragraphs as though fully set forth herein. Defendants are all liable based on the fact that each Defendant is an alter ego of every other Defendant.

87. Defendant SHC SD is the General Partner of the Partnership. As General Partner, SHC SD owed the fiduciary duties of loyalty and care to its co-partners. The other Defendants owed fiduciary duties to Plaintiff as entities with whom the Partnership placed funds and trusted to act with honesty and sound business judgment. Plaintiff placed a great deal of trust and reliance in the judgment and business decisions of Defendants. Each Defendant also owed fiduciary duties to Plaintiff as the alter egos of the other Defendants.

///

///

///

///

///

*COMPLAINT*
Chao v. HealthSouth Corporation, et al.

88.    Defendants breached their fiduciary obligations to maintain the Partnership's assets and business in a trustworthy and honest manner, and to not engage in criminal activity designed to financially damage and injure the Partnership. Defendants breached these obligations by placing Partnership assets in the use, possession, and control of HealthSouth who was known to Defendants to be conducting business activities in a fraudulent, dishonest, and criminal manner. Defendants have failed to properly execute their responsibilities, resulting in potential claims against the Partnership, Plaintiff, and damage to the reputation of the Partnership, Plaintiff's practice, and Plaintiff himself.

89.    Defendants breached their duties to Plaintiff when they knowingly presented Plaintiff with HealthSouth's fraudulent annual and quarterly reports.

90.    Defendants further breached their duties to Plaintiff by improperly charging the Partnership as described herein above.

91.    Defendants breached their fiduciary obligations to the Partnership by overcharging for insurance coverage and over-insuring the center through a related company. Defendants intentionally misrepresented to Plaintiff the amount of how much their insurance premiums cost annually. Although Defendants represented to Plaintiff that the insurance premiums were being used only for their center, the insurance premiums Plaintiff was paying were being used to insure several centers around the nation, which were also being managed by HS. HS was improperly self-insured. Moreover, Plaintiff is informed and believes that the insurance Plaintiff was receiving (which Defendants obtained for Plaintiff on its behalf) was not consistent with industry standards. Insurance premiums were less than what Plaintiff was paying during the time period HS was overcharging for premiums. In fact, Plaintiff is informed and believes that HS had an "umbrella" insurance policy, where they only had one insurance policy for many of the centers it managed (regardless of the procedures that were occurring at the center.) This is improper, and contrary to Defendants' representations to Plaintiff and the Partnership.

92.    In addition, as a result of their status as alter egos of each other, Defendants breached fiduciary duties by virtue of their use, possession, and control over Plaintiff and Partnership assets and their fraudulent, dishonest, and criminal conduct which placed those assets at risk. Defendants' frequent accounting mistakes requiring Plaintiff to absorb remedial responsibilities and costs associated with same was still yet another breach of fiduciary duty.

93.    As a proximate result of Defendants' actions, which were a substantial factor in precipitating Plaintiff's damages, Plaintiff has suffered damages in that the Partnership assets have been placed at grave risk, Plaintiff's personal reputation and medical practice has been jeopardized, the Partnership's reputation has been damaged, income has been lost and Plaintiff has been forced to incur substantial expenses in order to attempt to secure assets.

94.    Furthermore, Plaintiff is informed and believes that HealthSouth is currently in possession of Partnership assets. Those assets are at dire risk of being misappropriated by HealthSouth and forever lost to the rightful ownership of the Partnership.

95.    Plaintiff seeks injunctive relief pursuant to CCP §525, et al. preventing SHC SD from making any further Partnership funds available to the possession, use, or control of Defendants and/or their affiliates, and an order pursuant to CCP §572, et al. to place Partnership funds into accounts controlled by, accessible to, and for the benefit of only the Partnership. Plaintiff will suffer immediate and irreparable harm if these orders are not granted. Plaintiff also seeks damages in an amount yet to be determined.

96.    Defendants' conduct was and is willful, malicious, despicable, and intentionally fraudulent, thereby warranting the imposition of punitive and exemplary damages. Plaintiff prays that the Court will impose punitive and exemplary damages on Defendants in amounts sufficient to punish them and deter other such conduct in the future.

## VI.

## SIXTH CAUSE OF ACTION

### JUDICIAL DISSOLUTION AND ACCOUNTING

### (Against Defendants SHC SD, SHC MC, HS, SHC, and HSSC-W)

97.    Plaintiff re-alleges and incorporates by reference all relevant paragraphs as though fully set forth herein.

98.    At all relevant times mentioned herein, Defendant SHC SD was acting as the General Partner of the Partnership. SHC SD's obligations under the Partnership Agreement included the duty to care for and protect, in all particulars, the Partnership's financial interest and property and to provide Limited Partners, such as Plaintiff, with periodic statements of accounts of all monies and property from

*COMPLAINT*
Chao v. HealthSouth Corporation, et al.

1    the operations and to pay over to Plaintiff a share of all monies received. SHC SD is liable due to the

2    agreements. SHC SD has misappropriated partnership funds, taken secret profits, sold Partnership

3    assets, and perpetrated fraud against their partners in the Partnership. Plaintiff therefore, pursuant to the

4    case and statutory law underlying the holdings in Jacoby v. Feldman, 81 Cal. App. 3d 432, 443 (1978),

5    and Chatten v. Martell, 166 Cal.App.2nd 545, 552 (1958), seeks a judicial dissolution of the Partnership

6    and Accounting of same.

7         99.    The amount of money due from SHC SD to Plaintiff as a result of their acts herein and

8    above cannot be ascertained by Plaintiff without an accounting of the receipts and disbursements of the

9    affirmations, operations, and conduct of SHC SD. Plaintiff therefore prays that the Court order a judicial

10   dissolution of all Partnerships in which Plaintiff is partners with a HS Defendant, and for Defendant

11   SHC SD to provide a complete recording of all funds taken, managed, paid, and received by SHC SD

12   on behalf of the Partnership.

13   **VII.**

14   **SEVENTH CAUSE OF ACTION**

15   **CONSTRUCTIVE TRUST**

16   **(Against Defendants SHC SD, SHC MC, HS, SHC, and HSSC-W)**

17       100.    Plaintiff re-alleges and incorporates by reference all relevant paragraphs as though fully

18   set forth herein.

19       101.    At all material times herein, a confidential relationship existed between Plaintiff and

20   Defendants in that SHC SD was the General Partner of the Partnership and the other Defendants acted

21   as fiduciaries of the Partnership. At all material times herein, Plaintiff believed implicitly in the integrity

22   and truthfulness of Defendants, and reposed absolute trust and confidence in them.

23       102.    SHC SD violated their duties to Plaintiff as described above by placing Partnership assets

24   at risk, by asserting wrongful interest charges, and by wrongful allocations of costs as described herein

25   above. Defendants further violated their duties to Plaintiff by acting in a fraudulent, dishonest, and

26   criminal manner with respect to their business activities and wrongfully acquiring and detaining the

27   Partnership's funds by fraud and in violation of the trust that Plaintiff and the Partnership placed in SHC

28   SD.

---

*COMPLAINT*

**Chao v. HealthSouth Corporation, et al.**

103.   SHC SD did not have a right to wrongfully acquire and retain Plaintiff or Partnership assets.

104.   Defendants' acquisition and detention of Plaintiff and Partnership funds was wrongful in that the assets were placed in the hands of known criminals and wrongfully used for improper purposes as described above.

105.   By virtue of Defendants' violations of the relationships of trust and confidence existing between Plaintiff and Defendants, and Partnership and Defendants, Defendants now hold all such Plaintiff and Partnership assets as a constructive trustee for Plaintiff's benefit.

## VIII.

## EIGHTH CAUSE OF ACTION

## FRAUDULENT INDUCEMENT

### (Against Defendants SHC SD, SHC MC, HS, SHC, and HSSC-W)

106.   Plaintiff re-alleges and incorporates by reference all relevant paragraphs as though fully set forth herein.

107.   The apparent consent of Plaintiff to the Partnership Agreement and Sales Agreement was not real, mutual, or free in that it was obtained through fraud, as herein alleged.

108.   As the managing partner of the Partnership, SHC SD obtained the consent to transfer management responsibilities from SHC SD to another management company. The apparent consent of Plaintiff to the transfer of management responsibilities under the Partnership Agreement was not real, mutual, or free in that it was obtained through fraud, as herein alleged. All Defendants are liable based on the alter ego doctrine to Plaintiff. Defendants falsely and fraudulently represented to Plaintiff that its financial records were accurate. In fact, Defendants had been committing accounting fraud and all representations of financial matters were false. Defendants also falsely and fraudulently represented to Plaintiff that they would sell enough Partnership shares to boost Plaintiff's ownership to 80%, when they knew this to be false, and intended on inappropriately relying on the Medicare anti-kickback Statute all along.

Substantially all of HealthSouth's revenues are derived from private and governmental third-party payors through a billing reimbursement process that is subject to stringent cost controls.

1    Nonetheless, HealthSouth consistently reported and represented that it had achieved revenues and

2    earnings growth both internally and through acquisitions, which accelerated HealthSouth's rate of

3    growth. This reported growth and the representations relating thereto were materially false and were

4    based on the financial fraud and overbilling fraud alleged. As such, the center's financial statements

5    were presented in violation of generally accepted accounting principles (GAAP) and Securities and

6    Exchange Commission (SEC) rules. GAAP principals were to be followed. In fact, section 10.02 of

7    the Limited Partnership Agreement states in regards to the books and records of the partnership, "Such

8    books of account will be the property of the Partnership, will be kept in accordance with sound

9    accounting principles and procedures consistently applied..."

10        HealthSouth fraudulently reported favorable, but false financial results. GAAP, are those

11    principles recognized by the accounting profession as the conventions, rules and procedures necessary

12    to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. section 210.4-

13    01(a)(1)) states that financial statements filed with the SEC that are not prepared in compliance with

14    GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial

15    statements also must comply with GAAP, with the exception that they need not include disclosure that

16    would be duplicative of disclosures accompanying annual financial statements. (17 C.F.R. section

17    210.10-01(a).)  The financial statements that Defendants created and produced for Plaintiff and the

18    partnership did not abide by said regulations.

19        Moreover, pursuant to section 13(b)(2) of the Exchange Act, HealthSouth was required to "make

20    and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the

21    transactions and dispositions of the assets of the issuer and devise and maintain a system of internal

22    accounting control sufficient to provide reasonable assurances that: (I) transactions are executed in

23    accordance with management's general or specific authorization; transactions are recorded as necessary

24    to permit the preparation of financial statements in conformity with generally accepted accounting

25    principles..." Defendants failed to properly make and keep said records and accounts for Plaintiff and

26    the center.

27    ///

28    ///

1    In violation of GAAP, HealthSouth reported as assets items that were actually expenses. This

2    was accomplished by means of unsupported journal entries to reduce expenses and increase assets.

3    These entries had no justification, but were made so that HealthSouth could report false and misleading

4    financial results to the investing public, as well as to the Plaintiff. Defendants contracted to follow

5    GAAP principles, as set forth in the Exhibit entitled "HealthSouth Surgery Center Management Fee."

6    HealthSouth typically reports the financial results of their operations in financial statements that

7    include both an income statement and a balance sheet. HealthSouth's income statement reports, among

8    other things, should have included revenue recognized, expenses incurred, and income earned during

9    a stated period of time - usually for a fiscal quarter or fiscal year. Within an income statement, expenses

10   are generally subtracted from revenues to calculate net income. A company's balance sheet reports,

11   among other things, the assets and liabilities of the company at a given point in time, usually at the end

12   of a fiscal quarter or the end of a fiscal year. Defendants fraudulently misrepresented to Plaintiff that

13   all the numbers that were included in these statements created for Plaintiff, the partnership, and for the

14   public in the SEC Filings were accurate.

15   In general, the fraud was accomplished by making over $2.7 billion in false or unsupported

16   entries in HealthSouth's accounting systems. These improper accounting entries, made for the purpose

17   of inflating HealthSouth's earnings, took two principal forms: (1) exaggeration of reported revenue,

18   primarily through reductions to contractual adjustment accounts, and (2) failure to properly characterize

19   and record operating expenses.

20   Defendants deliberately falsified the center's accounting numbers in order to meet public

21   estimates and projections set by HealthSouth, and for the center. Plaintiff has recently discovered that

22   Defendant HealthSouth has admitted that the financial and operational reports published by HealthSouth

23   and filed with the SEC were false and misleading, and inflated to meet or exceed analysts' expectations.

24   This admission was based on Defendant HealthSouth's lengthy agreement with the Internal Revenue

25   Service (IRS) to re-state its financials for the last six years for the surgery centers it performed work on

26   throughout the nation.

27   ///

28   ///

---

*COMPLAINT*
Chao v. HealthSouth Corporation, et al.

109. When Defendants made these representations, they knew them to be false, and made those representations with the intent to defraud and deceive Plaintiff, and with intent to induce him to enter into the Partnership Agreement and Sales Agreement with Defendants, and to enter into contracts amending said previous agreements.

110. Plaintiff believed the representations and relied on the truth of them in entering into the Partnership Agreement and Sales Agreement. Plaintiff would not have given his apparent consent to the Partnership Agreement and Sales Agreement, had it not been for the fraud. With respect to the Partnership Agreement: the reliance by Plaintiff was justified because this information was in the custody and control of Defendants and was represented to be an accurate representation of the financial condition of HealthSouth. With respect to the Sales Agreement: the reliance by Plaintiff was justified because Defendants have always presented themselves as healthcare management specialists and experts, and the information was presented as an accurate representation of the legal boundaries Defendants and Plaintiff are required to work within.

111. Furthermore, Defendants failed to disclose to Plaintiff that HealthSouth was engaged in accounting fraud, and that reliance on the anti-kickback Statute was false and fraudulent. The failure of Defendants to disclose that information was made with the intent to induce Plaintiff to enter the Partnership Agreement and Sales Agreement with Defendants. Defendants falsely and fraudulently represented to Plaintiff that its financial records were accurate. Specifically, the accounting fraud began as early as 1994 as admitted in HealthSouth's Executive Officers' guilty pleas. These officers that knew about the accounting fraud were the same officers and directors of Defendants. The accounting fraud continued throughout the duration of the Partnership. In 1999, HealthSouth should have reported a loss of $191 million, but instead reported a profit of $230 million. To conceal this fraud, HealthSouth made false journal entries of fixed assets that were designed to avoid audit detection by not exceeding a certain dollar amount. Improper entries were spread far and wide in tiny pieces across the balance sheet. The Report of the Special Audit Review Committee of the Board of Directors of HealthSouth Corporation indicates that the improper entries were purposefully spread out and made in locations of the Managing ledger where they were likely to escape scrutiny.

///

*COMPLAINT*
**Chao v. HealthSouth Corporation, et al.**

112.  Defendants concealed their knowledge of the aforementioned fraudulent practices and refused to disclose the fraud perpetrated on the Plaintiff, the Partnership, and the public at large.  Other than stating the Defendants, at this time Plaintiff is unable to specifically state who was responsible over the years for never disclosing the information.  (This is permitted under the law: "The pertinent question in a concealment case is not who said what to whom; the question, among others, is whether Jones Day, in undertaking to disclose the $10 million financing, intentionally concealed its "toxic" terms from Vega and Monsterbook so that they would proceed with the transaction.  The complaint sufficiently apprises Jones Day of the facts of Vega's fraud claim to allow Jones Day to prepare its defense." Vega v. Jones, Day, Reavis & Pogue 121 Cal.App.4th 282, 296 (2004.))

113.  Plaintiff, at the time this failure to disclose and suppression of facts occurred, and at the time Plaintiff entered the Partnership Agreement and Sales Agreement, was ignorant of the existence of the facts which Defendants suppressed and failed to disclose.  If Plaintiff had been aware of the existence of the facts not disclosed by Defendants, Plaintiff would not have entered the Partnership Agreement or the Sales Agreement.

114.  As a proximate result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial.  Based on the fact that Defendants are alter egos of each other (as alleged previously, and which is hereby incorporated by reference), all Defendants are liable for the fraudulent inducement.

115.  As a proximate result of Defendants' actions, Plaintiff has suffered damages in that the Partnership assets have been placed at grave risk, Plaintiff's personal reputation and medical practice has been jeopardized, the Partnership's reputation has been damaged, income has been lost and Plaintiff has been forced to incur substantial expenses in order to attempt to secure assets.

116.  Furthermore, Plaintiff is informed and believes that HealthSouth is currently in possession of Partnership assets.  Those assets are at dire risk of being misappropriated by HealthSouth and forever lost to the rightful ownership of the Partnership.

117.  Plaintiff seeks injunctive relief pursuant to CCP §525, et al. preventing SHC SD from making any further Partnership funds available to the possession, use, or control of Defendants and/or their affiliates, and an order pursuant to CCP §572, et al. to place Partnership funds into accounts

1  controlled by, accessible to, and for the benefit of only the Partnership. Plaintiff will suffer immediate

2  and irreparable harm if this relief is not granted. Plaintiff also seeks damages in an amount yet to be

3  determined.

4       118.  Defendants' conduct was and is willful, malicious, despicable, and intentionally

5  fraudulent, thereby warranting the imposition of punitive and exemplary damages. Plaintiff prays that

6  the Court will impose punitive and exemplary damages on Defendants in amounts sufficient to punish

7  them and deter other such conduct in the future.

8  IX.

9  NINTH CAUSE OF ACTION

10  FRAUD AND DECEIT (NEGLIGENT MISREPRESENTATION)

11  (Against Defendants SHC SD, SHC MC, HS, SHC, and HSSC-W)

12       119.  Plaintiff re-alleges and incorporates by reference all relevant paragraphs as though fully

13  set forth herein. All Defendants are liable based on the alter ego doctrine.

14       120.  Defendants falsely and fraudulently represented to the Partnership and Plaintiff that the

15  financial records prepared by HS were accurate and were prepared in accordance with GAAP.

16  Specifically, in 1999 HealthSouth should have reported a loss of $191 million, but instead reported a

17  profit of $230 million. To conceal the aforementioned fraud, HealthSouth made false journal entries of

18  fixed assets that were designed to avoid audit detection by not exceeding a certain dollar amount. By

19  mid 2002, HealthSouth's total assets were overstated by $1.5 billion, and income was overstated by $150

20  million. The balance sheet in HealthSouth's 10-Q report filed for the 2nd quarter of 2002 overstated

21  property, plant, and equipment by $1 billion and cash was overstated by more than $300 million. By

22  June 2003, HS continued to create accounting records for the partnership which were fraudulent.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

*COMPLAINT*
**Chao v. HealthSouth Corporation, et al.**

1    Fraudulent entries included, but were not limited to, entries for bonuses recorded that were not

2    received at all and entries for contractual adjustments.  As to the contractual adjustments, the Report

3    indicated that adjustments to contractual allowances were made between the First Runs and the Second

4    Runs.  Plaintiff is informed and believes these same adjustments to contractual allowances in the First

5    and Second Runs constantly occurred with respect to the Partnership.  The extent of the fraudulent

6    accounting cannot be ascertained at this time due to the fact that HS has entered into an agreement with

7    the Internal Revenue Service to restate the financial records for all of its surgery center partnerships.

8    The fraud did not stop here.  Defendants defrauded Plaintiff when they charged Plaintiff for

9    management of the Partnership and simultaneously charged the Partnership for salaries and expenses

10   already covered.  Plaintiff is informed and believes Defendants defrauded Plaintiff by placing more

11   money in the Managing Partner's retained earnings account than called for pursuant to Article Three of

12   the Partnership Agreement.  Defendants defrauded the Partnership and Plaintiff when they required the

13   Partnership to purchase computers at more than double the competitive market rate from a company

14   owned, controlled and/or closely related to Mr. Scrushy, then the CEO of HealthSouth.  Defendants also

15   defrauded Plaintiff when they required the Partnership to purchase a SIS software license that they

16   assisted in developing and then claimed that the license belonged to Defendants.  Defendants defrauded

17   the Partnership and Plaintiff when they co-mingled the Partnership funds with these HS Defendants',

18   or other centers' funds.  All of these items identified above were hidden from Plaintiff in such a well-

19   crafted fashion that Plaintiff was unable to realize the fraud being perpetrated against them until just

20   prior to filing this Complaint.

21   Defendants falsely and fraudulently represented to Plaintiff that its financial records were

22   accurate.  In fact, Defendants had been committing accounting fraud and all representations of financial

23   matters were false.  Defendants also falsely and fraudulently represented to Plaintiff that they would sell

24   enough Partnership shares to boost Plaintiff's ownership to 80%, when they knew this to be false, and

25   intended on inappropriately relying on the Medicare anti-kickback statute all along.

26   ///

27   ///

28   ///

---

*COMPLAINT*
**Chao v. HealthSouth Corporation, et al.**

121.    When Defendants made these representations, they knew them to be false, and made those representations with the intent to defraud and deceive Plaintiff, and with intent to induce him to enter into the Partnership Agreement and Sales Agreement with Defendants, and to enter into contracts amending said previous agreements.

122.    When Defendants' made these representations, they had no reasonable ground for believing them to be true in that they knew them to be false, and made those representations with the intent to defraud and deceive, and induce Plaintiff to enter into the Partnership Agreement and Sales Agreement with Defendants, and to enter into contracts amending said previous agreements.

123.    Plaintiff believed the representations and relied on the truth of them in entering into the Partnership Agreement and Sales Agreement. Plaintiff would not have given his apparent consent to the Partnership or Sales Agreement, had it not been for the fraud. With respect to the Partnership Agreement: the reliance by Plaintiff was justified because this information was in the custody and control of Defendants, and was represented to be an accurate representation of the financial condition of HealthSouth. With respect to the Sales Agreement: the reliance by Plaintiff was justified because Defendants have always presented themselves as healthcare management specialists and experts, and the information was presented as an accurate representation of the legal boundaries Defendants and Plaintiff are required to work within.

124.    Furthermore, Defendants negligently failed to disclose to Plaintiff that HealthSouth was engaged in fraud such as that described herein. The failure of Defendants to disclose that information was made with the intent to induce Plaintiff to enter the Partnership and Sales Agreements with Defendants.

125.    Plaintiff, at the time these failures to disclose and suppressions of facts occurred, and at the time Plaintiff entered the Partnership and Sales Agreements, was ignorant of the existence of the facts which Defendants suppressed and failed to disclose. If Plaintiff had been aware of the existence of the facts not disclosed by Defendants, Plaintiff would not have entered the Partnership and Sales Agreements.

126.    As a proximate result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial.

127.   As a proximate result of Defendants' actions, Plaintiff has suffered damages in that the Partnership assets have been placed at grave risk, Plaintiff's personal reputation and medical practice has been jeopardized, the Partnership's reputation has been damaged, income has been lost and Plaintiff has been forced to incur substantial expenses in order to attempt to secure assets.

128.   Furthermore, Plaintiff is informed and believes that HealthSouth is currently in possession of Partnership assets. Those assets are at dire risk of being misappropriated by HealthSouth and forever lost to the rightful ownership of the Partnership.

129.   Plaintiff seeks injunctive relief pursuant to CCP §525, et al. preventing SHC SD from making any further Partnership funds available to the possession, use, or control of Defendants and/or their affiliates, and an order pursuant to CCP §572, et al. to place Partnership funds into accounts controlled by, accessible to, and for the benefit of only the Partnership. Plaintiff will suffer immediate and irreparable harm if this relief is not granted. Plaintiff also seeks damages in an amount yet to be determined.

130.   Defendants' conduct was and is willful, malicious, despicable, and intentionally fraudulent, thereby warranting the imposition of punitive and exemplary damages. Plaintiff prays that the Court will impose punitive and exemplary damages on Defendants in amounts sufficient to punish them and deter other such conduct in the future.

## X.

### TENTH CAUSE OF ACTION

### FRAUD AND DECEIT (INTENTIONAL MISREPRESENTATION)

### (Against Defendants SHC SD, SHC MC, HS, SHC, and HSSC-W)

131.   Plaintiff re-alleged and incorporates by reference all relevant paragraphs as though fully set forth herein. It is alleged on information and belief that many, if not all, of the following factors are satisfied to indicate that any liability found in this action against HEALTHSOUTH should also result in personal judgment against HEALTHSOUTH AFFILIATES: 1) there was a commingling of funds or assets between HEALTHSOUTH AFFILIATES and HEALTHSOUTH and affiliate operations; 2) HEALTHSOUTH treated HEALTHSOUTH AFFILIATES assets as their own; 3) there was a failure by HEALTHSOUTH and HEALTHSOUTH AFFILIATES to obtain authority to issue stock or in fact

*COMPLAINT*
Chao v. HealthSouth Corporation, et al.

1  issue the same; 4) there was a holding out by HEALTHSOUTH and HEALTHSOUTH AFFILIATES

2  that they are personally liable for corporate debts; 5) there was a failure by HEALTHSOUTH and

3  HEALTHSOUTH AFFILIATES to maintain minutes or adequate corporate records; 6) there was

4  improper domination and control of HEALTHSOUTH by HEALTHSOUTH AFFILIATES, and

5  vice-versa; 7) another corporation or entity used the same business location, or employees of

6  HEALTHSOUTH and HEALTHSOUTH AFFILIATES; 8) HEALTHSOUTH and HEALTHSOUTH

7  AFFILIATES were formed without sufficient capitalization; 9) HEALTHSOUTH and HEALTHSOUTH

8  AFFILIATES were a mere shell, or conduit for a single venture or the business of another entity

9  including affiliate operations; 10) the ownership, business activities, or management of

10  HEALTHSOUTH and HEALTHSOUTH AFFILIATES were concealed or misrepresented; 11) there

11  was a disregard of legal formalities; 12) HEALTHSOUTH and HEALTHSOUTH AFFILIATES were

12  used to procure labor or merchandise for another entity; 13) there was a diversion of assets from

13  HEALTHSOUTH to HEALTHSOUTH AFFILIATES, and vice versa, in detriment of creditors including

14  affiliate operations; 14) HEALTHSOUTH and HEALTHSOUTH AFFILIATES were, and are, being

15  used as a shield to avoid liability, or a subterfuge for illegal transactions, including violation of tax laws;

16  and 15) HEALTHSOUTH and HEALTHSOUTH AFFILIATES were formed and used to transfer to

17  it the liability of another entity. The above factors indicate that there is such a unity of interest and

18  ownership that the individuality, or separateness, of HEALTHSOUTH AFFILIATES and

19  HEALTHSOUTH has ceased; and the facts are such that an adherence to the fiction of the separate

20  existence of the corporation would, under these particular circumstances, sanction a fraud or promote

21  injustice. Alternatively, the corporate officers and directors of HEALTHSOUTH, by the above acts,

22  engaged in and participated in a fraud which should result in personal liability for the acts of

23  HEALTHSOUTH and HEALTHSOUTH AFFILIATES. HS, ECA, SHC, HSC-W, and NSC are liable

24  based on the alter ego doctrine because the officers and directors are the same for each of these

25  corporations and each of the corporations is one hundred percent affiliated with HealthSouth

26  Corporation. HS, ECA, SHC, HSC-W, and NSC are liable to all Plaintiffs including the individual

27  doctor Plaintiffs because of their individual agreements to provide professional medical services to an

28  entity managed and controlled by HS.

1      132.   On or about the end of every month every year, Defendants and specifically the staff

2 accountants prepared fraudulent financial statements that were provided to Plaintiff that intentionally

3 overstated the value of the Partnership's assets and income and deliberately misstated that those values

4 complied with generally accepted accounting principles. <u>Murphy v. BDO Siedman. LLP</u> (2003) 113

5 Cal.App.4th 687, 692. Furthermore, Defendants made adjustments to contractual allowances between

6 the first and second monthly accounting "runs" with respect to the partnership. Defendants would

7 provide the center with monthly accounting statements in a first run and then manipulate the numbers

8 for a second run, and fraudulently represented to Plaintiff that the second run numbers were accurate.

9 Fraudulent entries also included entries for bonuses to employees that were incorrect, and bonuses

10 recorded that were not received at all. To conceal the accounting fraud, HealthSouth made false journal

11 entries of fixed assets that were designed to avoid audit detection by not exceeding a certain dollar

12 amount. Defendants falsely and fraudulently represented to Plaintiff that its financial records were

13 accurate. In fact, Defendants had been committing accounting fraud and all representations of financial

14 matters were false. Defendants also falsely and fraudulently represented to Plaintiff that they would sell

15 enough Partnership shares to boost Plaintiff's ownership to 80%, when they knew this to be false, and

16 intended on inappropriately relying on the Medicare anti-kickback Statute all along.

17      133.   Substantially all of HealthSouth's revenues are derived from private and governmental

18 third-party payors through a billing reimbursement process that is subject to stringent cost controls.

19 Nonetheless, HealthSouth consistently reported and represented that it had achieved revenues and

20 earnings growth both internally and through acquisitions, which accelerated HealthSouth's rate of

21 growth. This reported growth and the representations relating thereto were materially false and were

22 based on the financial fraud and overbilling fraud alleged. As such, the center's financial statements

23 were presented in violation of generally accepted accounting principles (GAAP) and Securities and

24 Exchange Commission (SEC) rules. HealthSouth fraudulently reported favorable, but false financial

25 results. GAAP, are those principles recognized by the accounting profession as the conventions, rules

26 and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X

27 (17 C.F.R. section 210.4-01(a)(1)) states that financial statements filed with the SEC that are not

28 prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X

*COMPLAINT*
**Chao v. HealthSouth Corporation, et al.**

1   requires that interim financial statements also must comply with GAAP, with the exception that they

2   need not include disclosure that would be duplicative of disclosures accompanying annual financial

3   statements. (17 C.F.R. section 210.10-01(a).)  The financial statements that Defendants created and

4   produced for Plaintiff did not abide by said regulations.

5        Based on the agreements, wherein it states that sound accounting principles would be used,

6   Plaintiff was fraudulent induced to believe that the accounting would be sound, and would specifically

7   that GAAP principals were being followed.  When Defendants made these representations, they knew

8   them to be false, and made those representations with the intent to defraud and deceive Plaintiff, and

9   with intent to induce him to enter into the Partnership Agreement and Sales Agreement with Defendants,

10  and to enter into contracts amending said previous agreements.  Had Plaintiff known all of this, Plaintiff

11  would not have entered into the contracts amending said previous agreements.

12       134.    When Defendants' made these representations, they had no reasonable ground for

13  believing them to be true in that they knew them to be false, and made those representations with the

14  intent to defraud and deceive, and to induce Plaintiff to enter into the Partnership Agreement and Sales

15  Agreement with Defendants, and to enter into contracts amending said previous agreements.

16       135.    Plaintiff believed the representations and relied on the truth of them in entering into the

17  Partnership Agreement and Sales Agreement.  Plaintiff would not have given his apparent consent to

18  the Partnership or Sales Agreement, had it not been for the fraud.  With respect to the Partnership

19  Agreement, the reliance by Plaintiff was justified because this information was in the custody and

20  control of Defendants and was represented to be an accurate representation of the financial condition of

21  HealthSouth.  With respect to the Sales Agreement, the reliance by Plaintiff was justified because

22  Defendants have always presented themselves as healthcare management specialists and experts, and

23  the information was presented as an accurate representation of the legal boundaries Defendants and

24  Plaintiff are required to work within.

25       136. . HealthSouth typically reports the financial results of their operations in financial

26  statements that include both an income statement and a balance sheet. HealthSouth's income statement

27  reports, among other things, should have included revenue recognized, expenses incurred, and income

28  earned during a stated period of time - usually for a fiscal quarter or fiscal year. Within an income

*COMPLAINT*
**Chao v. HealthSouth Corporation, et al.**

1    statement, expenses are generally subtracted from revenues to calculate net income. A company's

2    balance sheet reports, among other things, the assets and liabilities of the company at a given point in

3    time, usually at the end of a fiscal quarter or the end of a fiscal year. Defendants fraudulently

4    misrepresented to Plaintiff that all the numbers that were included in these statements created for

5    Plaintiff and for the public in the SEC Filings were accurate.

6         In general, the fraud was accomplished by making over $2.7 billion in false or unsupported

7    entries in HealthSouth's accounting systems. These improper accounting entries, made for the purpose

8    of inflating HealthSouth's earnings, took two principal forms: (1) exaggeration of reported revenue,

9    primarily through reductions to contractual adjustment accounts, and (2) failure to properly characterize

10    and record operating expenses. Furthermore, Defendants intentionally failed to disclose to Plaintiff that

11    HealthSouth was engaged in fraud such as that described herein. The failure of Defendants to disclose

12    that information was made with the intent to induce Plaintiff to enter the Partnership and Sales

13    Agreements with Defendants. In becoming a party to this agreement, all accounting records created

14    each month by HS for Plaintiff must be considered false representations made in writing once delivered

15    (to Plaintiff) monthly each year.

16         137.   Plaintiff, at the time these failures to disclose and suppressions of facts occurred, and at

17    the time Plaintiff entered the Partnership and Sales Agreements, was ignorant of the existence of the

18    facts which Defendants suppressed and failed to disclose. If Plaintiff had been aware of the existence

19    of the facts not disclosed by Defendants, Plaintiff would not have entered the Partnership and Sales

20    Agreements. Plaintiff has recently discovered that Defendant HealthSouth has admitted that the

21    financial and operational reports published by HealthSouth and filed with the SEC were false and

22    misleading, and inflated to meet or exceed analysts' expectations. This admission was based on

23    Defendant HealthSouth's lengthy agreement with the Internal Revenue Service (IRS) to re-state its

24    financials for the last six years for the surgery centers it performed work on throughout the nation.

25         138.   The information that was stated when these fraudulent misrepresentations were made was

26    that all of the information contained within the financial documents was accurate, and complied with

27    the generally accepted accounting principles. These fraudulent representations were made on or about

28    every month of every year that Defendants were a part of the center, and have been continuous. The

1   fraudulent representations were hidden from Plaintiff in such a well-crafted fashion that Plaintiff was

2   unable to realize the fraud being perpetrated against very recently. These representations were in fact

3   false. The truth was as follows: Defendants prepared fraudulent financial statements that intentionally

4   overstated the value of the Partnership's assets and misrepresented income and deliberately misstated

5   that those values complied with generally accepted accounting principles. The statements were false and

6   misleading in that they failed to reveal and/or contradicted the state of affairs at the company, and at the

7   center.

8        As the manager, Defendants managed the funds of the partnership. Using its powers as manager

9   of the partnership (which Defendants induced Plaintiff to bestow upon them), Defendants deposited

10  funds daily into the partnership account. However, that account was swept on a daily basis of all funds,

11  which were deposited into another account with HealthSouth affiliates. The funds were then transferred

12  to HealthSouth, where the partnership's and approximately 200 other surgical center's accounts were

13  handled and processed by HealthSouth. Defendants represented that HealthSouth could be trusted to

14  manage the finances of the Partnership, when in fact the entire HealthSouth operation was a criminal

15  scheme to defraud its business partners (charging for items not properly chargeable.) HealthSouth

16  falsified the accounting to enrich itself and its executives personally.

17       139.    In justifiable reliance upon Defendants' conduct, Plaintiff was induced to continue the

18  partnership agreement with the Defendants as described above and Plaintiff continued to contract to have

19  professional services provided to the center by HS. At the time Plaintiff acted, Plaintiff did not know

20  the representations were false and believed they were true. Plaintiff acted in justifiable reliance upon

21  the truth of the representations. Reliance was justifiable due to the size of HS and its advertising,

22  particularly the fact that it provided management services to so many entities. Plaintiff would not have

23  given their apparent consent to the agreement and monthly management fees had it not been for the

24  fraud. The reliance by Plaintiff was justified because this information was in the custody and control

25  of the Defendants, and was represented to be an accurate representation of the financial condition of HS.

26  Because of Plaintiff's reliance upon Defendants' conduct, Defendants have caused Plaintiff damages.

27       As a proximate result of Defendants' actions, Plaintiff has suffered damages in an amount to be

28  determined at trial. As a proximate result of Defendants' actions, Plaintiff has suffered damages in that

*COMPLAINT*
Chao v. HealthSouth Corporation, et al.

1   the Partnership assets have been placed at grave risk, Plaintiff's personal reputation and medical practice

2   has been jeopardized, the Partnership's reputation has been damaged, income has been lost, and Plaintiff

3   has been forced to incur substantial expenses in order to attempt to secure assets.

4       140.    Furthermore, Plaintiff is informed and believes that HealthSouth is currently in

5   possession of Partnership assets. Those assets are at dire risk of being misappropriated by HealthSouth

6   and forever lost to the rightful ownership of the Partnership.

7       141.    Plaintiff seeks injunctive relief pursuant to CCP §525, et al. preventing SHC SD from

8   making any further Partnership funds available to the possession, use, or control of Defendants and/or

9   their affiliates, and an order pursuant to CCP §572, et al. to place Partnership funds into accounts

10  controlled by, accessible to, and for the benefit of only the Partnership. Plaintiff will suffer immediate

11  and irreparable harm if this relief is not granted. Plaintiff also seeks damages in an amount yet to be

12  determined.

13      142.    Defendants' conduct was and is willful, malicious, despicable, and intentionally

14  fraudulent, thereby warranting the imposition of punitive and exemplary damages. Plaintiff prays that

15  the Court will impose punitive and exemplary damages on Defendants in amounts sufficient to punish

16  them and deter other such conduct in the future.

## XI.

## ELEVENTH CAUSE OF ACTION

## FAILURE TO DISCLOSE AND/OR CONCEALMENT OF MATERIAL FACTS

### (Against Defendants SHC SD, SHC MC, HS, SHC, and HSSC-W)

21      143.    Plaintiff re-alleges and incorporates by reference all relevant paragraphs as though fully

22  set forth herein.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

*COMPLAINT*
Chao v. HealthSouth Corporation, et al.

144.  At this time, other than stating the "Defendants," Plaintiff is unable to specifically state who was responsible over the years for never disclosing the information. (This is permitted under the law: "The pertinent question in a concealment case is not who said what to whom; the question, among others, is whether Jones Day, in undertaking to disclose the $10 million financing, intentionally concealed its "toxic" terms from Vega and Monsterbook so that they would proceed with the transaction. The complaint sufficiently apprises Jones Day of the facts of Vega's fraud claim to allow Jones Day to prepare its defense." Vega v. Jones, Day, Reavis & Pogue 121 Cal.App.4th 282, 296 (2004.)

Defendants were bound to disclose that its financial records were inaccurate and that it had no intention of selling Plaintiff the aforementioned shares of the Partnership by virtue of the fiduciary relationship between Plaintiff and Defendants.  They did not disclose the fraudulent activities or inaccurate records stemming from said activities. Each of the Defendants are responsible for such failure to disclose and/or concealment of the overstatements of revenues and worth of HealthSouth by virtue of each Defendant's alter ego status.

145.  Plaintiff was in a fiduciary relationship with Defendants, and Defendants had a duty to disclose material facts to Plaintiff. Defendants prepared fraudulent financial statements, and provided them to Plaintiff as being true and accurate. These fraudulent financial statements intentionally overstated the value of the Partnership's assets and income, and deliberately misstated to other centers that those values complied with generally accepted accounting principles. Murphy v. BDO Siedman, LLP 113 Cal.App.4th 687, 692 (2003.) Defendants concealed and or failed to disclose this material fact. The concealed or non-disclosed financial inaccuracies and other fraudulent behavior were material as Plaintiff relied upon them in entering the Partnership Agreement and Sales Agreement, and to enter into contracts amending said previous agreements. HealthSouth consistently reported and represented that it had achieved revenues and earnings growth both internally and through acquisitions, which accelerated HealthSouth's rate of growth.  This reported growth and the representations relating thereto were materially false and were based on the financial fraud and overbilling fraud alleged.  As such, the center's financial statements were presented in violation of generally accepted accounting principles (GAAP) and Securities and Exchange Commission (SEC) rules. Defendants concealed these facts from Plaintiff, although they had a duty to disclose said material facts. Despite its duty to do so, Defendants

---

*COMPLAINT*
Chao v. HealthSouth Corporation, et al.

1 concealed and or failed to disclose the fact that HealthSouth fraudulently reported favorable, but false

2 financial results.

3      146.    Defendants concealed and or failed to disclose material facts it was bound to disclose by

4 telling Plaintiff other facts to mislead Plaintiff and prevent Plaintiff from discovering the concealed or

5 suppressed facts. Specifically, Defendants were bound to disclose that its financial records were

6 inaccurate by virtue of its fiduciary relationship with Plaintiff and the partnership. Specifically, in 1999

7 HealthSouth should have reported a loss of $191 million, but instead reported a profit of $230 million.

8 To conceal this fraud, HealthSouth made false journal entries of fixed assets that were designed to avoid

9 audit detection by not exceeding a certain dollar amount. Improper entries were spread far and wide in

10 tiny pieces across the balance sheet. Defendants concealed and or failed to disclose to Plaintiff the fact

11 that Defendants were making these fraudulent journal entries, despite its fiduciary duty that it owed to

12 Plaintiffs. Fraudulent entries include fraudulent bonus related entries and contractual adjustments. As

13 to the contractual adjustments, the Report indicated that adjustments to contractual allowances were

14 made between the First Runs and the Second Runs. Plaintiff is informed and believes these same

15 adjustments to contractual allowances in the First and Second Runs occurred with respect to the

16 Partnership.

17      When Defendants failed to disclose or conceal the aforementioned facts, they knew them to be

18 material, knew they had a duty to disclose, and knew Plaintiff would rely to Plaintiff's own detriment.

19 Nevertheless, Defendants failed to disclose or conceal these facts with the intent to defraud and deceive

20 Plaintiff and with intent to induce Plaintiff to enter into the Partnership and Sales Agreements.

21      147.    The fraud did not stop here. Defendants defrauded Plaintiff when they charged the

22 Partnership for management of Partnership and simultaneously with salaries and expenses already

23 covered by the monthly management fee (which was equal to six percent of the net revenues.) Plaintiff

24 is informed and believes that Defendants defrauded the Partnership and Plaintiff by placing more money

25 in the Managing Partner's retained earnings account. Defendants defrauded the Partnership and Plaintiff

26 when they required the Partnership to purchase computers at more than double the competitive market

27 rate from a company owned, controlled and/or closely related to Mr. Scrushy, then the CEO of

28 HealthSouth. Defendants failed to properly insure the center at a reasonable and competitive rate.

---

*COMPLAINT*
**Chao v. HealthSouth Corporation, et al.**

1    Defendants breached their fiduciary obligations to the Partnership and Plaintiff by overcharging for

2    insurance coverage, and over-insuring the center through a related company. Defendants concealed and

3    or failed to disclose these material facts to Plaintiff despite the fiduciary duty it owed to Plaintiff.

4           Defendants also defrauded Plaintiff when they required the Partnership to purchase a SIS

5    software license that they assisted in developing and then claimed that the license belonged to

6    Defendants.   Defendants defrauded Plaintiff when they co-mingled the Partnership funds with

7    Defendants and other centers' funds. All of these items identified above were hidden (i.e. Defendants

8    concealed and or failed to disclose) from Plaintiff in such a well-crafted fashion that Plaintiff was unable

9    to realize the fraud being perpetrated against the Partnership and them until just prior to filing this

10   lawsuit.

11          Plaintiff had no knowledge of the non-disclosed or concealed facts and relied on Defendants

12   representations in entering into the Partnership Agreement. Plaintiff would not have given his apparent

13   consent to the Partnership or Sales Agreement, had it not been for the fraud.  With respect to the

14   Partnership Agreement, the reliance by Plaintiff was justified because this information was in the

15   custody and control of Defendants and was represented to be an accurate representation of the financial

16   condition of HealthSouth. With respect to the Sales Agreement, the reliance by Plaintiff was justified

17   because Defendants have always presented themselves as healthcare management specialists and experts,

18   and the information was presented as an accurate representation of the legal boundaries Defendants and

19   Plaintiff are required to work within.

20          148.    Defendants are responsible for such failure to disclose and or concealment of the

21   overstatements of revenues and worth of HealthSouth. Defendants concealed and or failed to disclose

22   these facts with the intent to defraud and induce Plaintiff to act.  Specifically, despite the fact that

23   Defendants had been committing accounting fraud, and made numerous representations of its financial

24   matters (as discussed above), Defendants concealed and or failed to disclose these material facts with

25   the intent to induce Plaintiff and the center  to allow HealthSouth to take over the partnership

26   agreements. The concealed or non-disclosed financial inaccuracies were material as Plaintiff relied upon

27   them in continuing the Partnership Agreement upon termination of same with previous partners, entering

28   the management agreement, and to enter into contracts amending said previous agreements.

---

*COMPLAINT*

Chao v. HealthSouth Corporation, et al.

1       When Defendants failed to disclose and or concealed the accurate financial standing of

2  HealthSouth, they knew these facts to be material, knew they had a duty to disclose, knew Plaintiff

3  would rely to Plaintiff's own detriment, and nevertheless failed to disclose and or concealed these

4  material facts with the intent to defraud and deceive the Partnership, and with intent to induce Plaintiff

5  to allow Defendants to take over the agreements, and all of the responsibilities these agreements entailed.

6  Defendants represented to Plaintiff that HealthSouth could be trusted to manage the finances of the

7  Partnership, when in fact the entire HealthSouth operation was a criminal scheme to defraud its business

8  partners (including creating and providing inaccurate and fraudulent financial documents.) HealthSouth

9  falsified the accounting to enrich it and its executives personally.

10       In justifiable reliance upon Defendants' conduct, Plaintiff was induced to continue the

11  partnership agreement with Defendants.  At the time Plaintiff acted, Plaintiff was unaware of the

12  concealed or suppressed facts, and would not have taken the action if Plaintiff had known about the

13  material facts (as set forth above.)  Plaintiff would not have given the apparent consent to allow HS to

14  take over the agreement (and all of the responsibilities included in the agreement) had it not been for the

15  fraud.  The reliance by Plaintiff was justified because this information was in the custody and control

16  of Defendants, and was represented to be an accurate representation of the financial condition of HS.

17  Specifically, Defendants knew of material facts (as described above), and also knew that those material

18  facts were neither known nor readily accessible to Plaintiff.

19       Plaintiff had no knowledge of the non-disclosed or concealed material facts and relied on

20  Defendants' representations and omissions in entering in allowing HS to take over said agreements.

21  Plaintiff would not have given the apparent consent to allow HS to take over the agreements had said

22  nondisclosed or concealed material facts been revealed.  Plaintiff's reliance was justified because this

23  information was in the custody and control of Defendants, and HealthSouth's financial standing was

24  represented as a complete and accurate representation of the financial condition of HealthSouth.

25  ///

26  ///

27  ///

28  ///

---

*COMPLAINT*
**Chao v. HealthSouth Corporation, et al.**

149.    As a proximate result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial. As a proximate result of Defendants' actions, Plaintiff has suffered damages in that the Partnership assets have been placed at grave risk, Plaintiff's personal reputation and medical practice has been jeopardized, the Partnership's reputation has been damaged, income has been lost, and Plaintiff has been forced to incur substantial expenses in order to attempt to secure assets.

150.    Furthermore, Plaintiff is informed and believes that HealthSouth is currently in possession of Partnership assets. Those assets are at dire risk of being misappropriated by HealthSouth and forever lost to the rightful ownership of the Partnership.

151.    Plaintiff seeks injunctive relief pursuant to CCP §525, et al. preventing SHC SD from making any further Partnership funds available to the possession, use, or control of Defendants and/or their affiliates, and an order pursuant to CCP §572, et al. to place Partnership funds into accounts controlled by, accessible to, and for the benefit of only the Partnership. Plaintiff will suffer immediate and irreparable harm if this relief is not granted. Plaintiff also seeks damages in an amount yet to be determined.

152.    Defendants' conduct was and is willful, malicious, despicable, and intentionally fraudulent, thereby warranting the imposition of punitive and exemplary damages. Plaintiff prays that the Court will impose punitive and exemplary damages on Defendants in amounts sufficient to punish them and deter other such conduct in the future.

## XII.

## TWELFTH CAUSE OF ACTION

## CONSTRUCTIVE FRAUD

### (Against Defendants SHC SD, SHC MC, HS, SHC, and HSSC-W)

153.    Plaintiff re-alleges and incorporates by reference all relevant paragraphs as though fully set forth herein.

154.    Defendants had a confidential relationship with Plaintiff. Specifically, Defendants had a confidential and fiduciary relationship with the Partnership and Plaintiff due to their status as general partners in the Partnership.

///

*COMPLAINT*
**Chao v. HealthSouth Corporation, et al.**

155.    Defendants made material misstatements about its financial records despite their duty to communicate with Plaintiff at all times with honesty, good faith and fair dealing. Specifically, in 1999 HealthSouth should have reported a loss of $191 million, but instead reported a profit of $230 million. To conceal this fraud, HealthSouth made false journal entries of fixed assets that were designed to avoid audit detection by not exceeding a certain dollar amount. Improper entries were spread far and wide in tiny pieces across the balance sheet. Fraudulent entries include, but were not limited to, entries for bonuses to employees that were received by such employees that were incorrect and bonuses recorded that were not received at all and contractual adjustments. As to the contractual adjustments, the Report indicated that adjustments to contractual allowances were made between the First Runs and the Second Runs. Plaintiff is informed and believe these same adjustments to contractual allowances in the First and Second Runs occurred with respect to the Partnership.

The fraud did not stop here. Defendants defrauded Plaintiff when they charged Plaintiff for management of the Partnership and simultaneously charged the Partnership for salaries and expenses already covered by the monthly management fee (which was equaled to six percent of the net revenues.) Plaintiff is informed and believe Defendants defrauded Plaintiff by placing more money in the Managing Partner's retained earnings account than allowed. Defendants defrauded Plaintiff when they required the Partnership to purchase computers at more than double the competitive market rate from a company owned, controlled and/or closely related to Mr. Scrushy, then the CEO of HealthSouth. HS and ECA also defrauded Plaintiff when they required the Partnership to purchase a SIS software license that they assisted in developing and then claimed that the license belonged to Defendants. Defendants defrauded Plaintiff when they co-mingled the Partnership funds with Defendants' and/or other centers' funds. Defendants failed to properly insure the center at a reasonable and competitive rate. Defendants breached their fiduciary obligations to the Partnership and to Plaintiff by overcharging for insurance coverage, and over-insuring the center through a related company. All of these items identified above were hidden from the center and Plaintiff in such a well-crafted fashion that Plaintiff was unable to realize the fraud being perpetrated against the Partnership and them until shortly prior to the filing of this Complaint.

///

*COMPLAINT*
Chao v. HealthSouth Corporation, et al.

1  Defendants made material misstatements about their financial records, as described herein,

2  despite Defendants duty to communicate with Plaintiff at all times with honesty, good faith and fair

3  dealing. Each of the Defendants is responsible for such failure to disclose and/or concealment of the

4  overstatements of revenues and worth of HealthSouth by virtue of each Defendant's alter ego status.

5  156.   Plaintiff relied on Defendants representations in entering into the Partnership and Sales

6  Agreements, and in entering into contracts amending said previous agreements. Plaintiff would not have

7  given their apparent consent to the Partnership Agreement but for Defendants' misrepresentations,

8  failures to disclose or concealment of the aforementioned facts.  With respect to the Partnership

9  Agreement: the reliance by Plaintiff was justified because this information was in the custody and

10 control of Defendants, and was represented to be an accurate representation of the financial condition

11 of HealthSouth. With respect to the Sales Agreement, the reliance by Plaintiff was justified because

12 Defendants have always presented themselves as healthcare management specialists and experts, and

13 the information was presented as an accurate representation of the legal boundaries Defendants and

14 Plaintiff are required to work within.

15 157.   In justifiable reliance upon Defendants' conduct, Plaintiff was induced to act. Plaintiff

16 relied on Defendants' representations and omissions in entering into the agreements.  At the time

17 Plaintiff acted, Plaintiff did not know the representations were false and in fact, believed these

18 representations were true.  Plaintiff acted in justifiable reliance upon the truth of the representations.

19 Plaintiff would not have given their apparent consent to the Partnership Agreement or management

20 agreement but for Defendants' misrepresentations, and failures to disclose or concealment of the

21 aforementioned facts. Plaintiff's reliance was justified because this information was in the custody and

22 control of Defendants, and HealthSouth's financial standing was represented as a complete and accurate

23 representation of the financial condition of HealthSouth.

24 158.   As a proximate result of Defendants' actions, Plaintiff has suffered damages in an amount

25 to be determined at trial. As a proximate result of Defendants' actions, Plaintiff has suffered damages

26 in that the Partnership assets have been placed at grave risk, Plaintiff's personal reputation and medical

27 practice has been jeopardized, the Partnership's reputation has been damaged, income has been lost and

28 Plaintiff has been forced to incur substantial expenses in order to attempt to secure assets.

*COMPLAINT*
Chao v. HealthSouth Corporation, et al.

159.    Furthermore, Plaintiff is informed and believes that HealthSouth is currently in possession of Partnership assets. Those assets are at dire risk of being misappropriated by HealthSouth and forever lost to the rightful ownership of the Partnership.

160.    Plaintiff seeks injunctive relief pursuant to CCP §525, et al. preventing SHC SD from making any further Partnership funds available to the possession, use, or control of Defendants and/or their affiliates, and an order pursuant to CCP §572, et al. to place Partnership funds into accounts controlled by, accessible to, and for the benefit of only the Partnership. Plaintiff will suffer immediate and irreparable harm if this relief is not granted. Plaintiff also seeks damages in an amount yet to be determined.

161.    Defendants' conduct was and is willful, malicious, despicable, and intentionally fraudulent, thereby warranting the imposition of punitive and exemplary damages. Plaintiff prays that the Court will impose punitive and exemplary damages on Defendants in amounts sufficient to punish them and deter other such conduct in the future.

## XIII.

## THIRTEENTH CAUSE OF ACTION

## VIOLATION OF BUSINESS AND PROFESSIONAL CODE § 17200 –

## UNFAIR BUSINESS PRACTICES

### (Against all Defendants)

162.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

163.    Besides those acts committed by Defendants and set forth above, Plaintiff is informed and believes and thereon alleges that Defendants have also repeatedly violated California Business and Professional Code § 650. Such unlawful acts include, but are not limited to, Defendants having unlawfully payed a referral fee for patients receiving Medicare benefits at other centers managed and/or owned by them. These same acts constitute a violation of federal law.

///

///

///

*COMPLAINT*
Chao v. HealthSouth Corporation, et al.

164.    Furthermore, Plaintiff is informed and believes and thereon alleges that Defendants repeatedly use non-standard accounting methods which violate Generally Accepted Accounting Principles (hereinafter "GAAP"), and do so with the intention of committing a fraud upon the market and gaining unfair advantage over competition.

165.    At all times relevant to this litigation, as previously alleged, Defendants knowingly participated in a pattern and practice of committing, authorizing, and/or ratifying business practices that are: (1) unlawful and/or (2) significantly threaten or harm competition in San Diego County and/or (3) misuse monies from governmental programs thereby depriving California's citizenry of benefits paid for with federal and state tax dollars.

166.    Plaintiff is informed and believes and thereon alleges, that such acts, unless restrained, have and will cause irreparable injury and damage to the public and/or third parties because such acts are: 1) unlawful and unfair; and/or 2) significantly threaten or harm competition in San Diego County; and/or 3) misuse monies from governmental programs thereby depriving California's citizenry of benefits paid for with federal and state tax dollars.  Plaintiff is informed and believes, and thereon alleges, that Defendants' acts have caused the public and/or third parties damages in an amount in excess of the minimum jurisdiction of this Court, the precise amount of which will be proven at the time of trial. The exact extent, nature and amount of such damages and injuries are impossible to ascertain in that Plaintiff is informed and believes that Defendants' conduct is ongoing.

167.    Plaintiff is informed and believes and thereon alleges that the public and/or third parties, do not have a plain, speedy and adequate remedy at law due to the ongoing violations of Defendants.

168.    Plaintiff brings the present cause of action under Business and Professional Code §17200 et seq., to enforce important rights affecting the public interest as set forth herein due to Defendants' unlawful business practices.  Pursuant to Business and Professional Code § 17203, Plaintiff, on behalf of himself and the public and/or third parties, seek to enjoin Defendants, and their representatives or agents, from continuing the actions set forth in this Complaint.

///

///

///

169.   Plaintiff was required to obtain legal counsel to protect the rights of the public and/or third parties.  Consequently, Plaintiff has incurred attorneys' fees in an amount to be proven at the time of trial.  Plaintiff is entitled to attorneys' fees pursuant to <u>Code of Civil Procedure</u> § 1021.5 in that the present action is brought to enforce important rights affecting the public interest as set forth above.

### XIV.

### FOURTEENTH CAUSE OF ACTION

### SPECIFIC PERFORMANCE

### (Against Defendant SCA)

170.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

171.   On or about August 2007, Plaintiff and Defendants entered an agreement, which specifically provided that Defendants were to sell their ownership interests in the partnership to Plaintiff, which are at issue in this case.  Plaintiff and Defendants agreed that Plaintiff was going to buy Defendants' ownership interest in exchange for money.

172.   This consideration was adequate, and the agreement was just and reasonable as it pertains to the Defendants because the Purchase Agreement was negotiated openly and fairly for these terms as combined with the contract as a whole.

173.   After reaching the terms of this agreement, Defendants (in violation of their agreement) went behind Plaintiff's back and began negotiating a better contract with a third party because Defendants were going to be gaining more money for the deal with the third party.  Meanwhile, Defendants continued to falsely misrepresent to Plaintiff that the agreement was still going to be going forward.  Defendants failed to comply with the terms of agreement that Plaintiff and Defendants reached, and falsely represented to Plaintiff that they would continue to move forward with finalizing and signing the purchase agreement.  Defendants have refused to move forward with the sale of its ownership interests in the partnership.  At all times referred to herein, Defendants were, and now are, the owners and in possession of the ownership interests described in this Complaint.

174.   Plaintiff has complied with and performed their side of the agreement and the terms specifically relating to the transfer and sale of Defendants' ownership interests, and or are ready, willing,

*COMPLAINT*
Chao v. HealthSouth Corporation, et al.

1  and able to perform such.  Throughout the entire negotiation process, Plaintiff has agreed to all of

2  Defendants' terms and changes to the terms, especially to help facilitate finalizing the sale.

3      175.  Defendants have failed to comply with the terms of the sale. Based upon information and

4  belief, Plaintiff has learned that Defendants are attempting to improperly transfer and sell their

5  ownership interests to a third party (who Defendants found out about from Plaintiff) as referenced

6  herein.

7      176.  Plaintiff requests that the purchase agreement (and the terms referenced within it,

8  including Defendants' ownership shares) be subject to specific performance because Defendants'

9  ownership interests are unique.  There is no adequate remedy at law if the Court does not enforce this

10  term as Plaintiff will no longer be able to purchase these ownership shares.

11      177.  Money damages, in this case will not suffice, because the value of Defendants' ownership

12  interests is tied to the value of the partnership, which necessarily has little value without the ability to

13  sell it.

14      178.  Plaintiff has no adequate remedy at law if this term is not enforced because Plaintiff will

15  not be able to own Defendants' ownership interest by any other manner.

16  XV.

17  FIFTEENTH CAUSE OF ACTION

18  INJUNCTIVE RELIEF

19  (Against Defendant SCA)

20      179.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though

21  fully set forth herein.

22      180.  As herein alleged above, Defendants continue to refuse to cooperate in the process of

23  going forward with the sale of the general partner's interested in the partnership.

24      181.  Upon information and belief, Defendants have been and continue to be in violation of the

25  contract to sell the partnership's interest.

26  ///

27  ///

28  ///

1   182.   Defendants' wrongful conduct, unless restrained and enjoined by order of this court, will

2   cause great and irreparable harm to Plaintiff. Accordingly, Defendants should be enjoined from selling

3   their partnership interests to any other purchaser, and ordered to sell all of the general partner's interests

4   in the partnership, and allow Plaintiff to acquire (by buying) all of the interests in the partnership.

5   183.   Plaintiff is entitled to attorney fees pursuant to contract.

### XVI.

### SIXTEENTH CAUSE OF ACTION

### INTENTIONAL INTERFERENCE WITH CONTRACT

### (Against Defendant SCA)

10   184.   On or about August 2007, Plaintiff and a third party, University of California - San Diego

11   (hereinafter "UCSD" or "third party") began an contractual economic relationship. No written contract

12   existed yet because negotiations were still being discussed. Additionally, Plaintiff was still waiting for

13   the Purchase Agreement between Plaintiff and Defendants to be signed. Plaintiff agreed to sell UCSD

14   interests in the partnership at issue in exchange for money. UCSD agreed to provide Plaintiff with said

15   money in exchange for the ownership interest.

16   185.   This existence of this agreement contained future economic benefits to Plaintiff because

17   Plaintiff would have received compensation for the ownership interests it was going to sell, which

18   Plaintiff was initially to buy from Defendants. Plaintiff and UCSD had been negotiating the deal of the

19   sale of the ownership interests for months.

20   186.   Due to the sale of Defendants' interest in the partnership, Plaintiff had intended selling

21   interests to another third party. Defendants knew of Plaintiff's intentions once when Plaintiff was to

22   gain Defendants' ownership interest. Nonetheless, as Defendants and Plaintiff were finalizing the

23   written terms of the purchase agreement that had been reached regarding Defendants' ownership interest,

24   Defendants were going behind Plaintiff's back and negotiating with UCSD. Consequently, at the time

25   Plaintiff and Defendants had agreed to finalize the purchase agreement, Defendants were negotiating to

26   sell the same ownership interests it was selling to Plaintiff (because Defendants were selling the shares

27   at a higher amount to UCSD.)

28   ///

---

*COMPLAINT*
Chao v. HealthSouth Corporation, et al.

187.    Defendants knew of the above described negotiations existing between Plaintiff and UCSD. Defendants were already negotiating with UCSD behind Plaintiff's back. Defendants knew of the existence of Plaintiff's negotiations with UCSD because Plaintiff had said something to Defendants during communications with Defendants.

188.    Defendants intentionally began negotiations with UCSD (to sell the same ownership interests that Plaintiff was going to sell to UCSD.) Defendants intentionally and purposefully disrupted the above-described economic relationship between Plaintiff and UCSD.

189.    Defendants continued to have several separate communications with both Plaintiff and UCSD regarding the sale of its ownership interest. Throughout the entire time, Defendants intended to harm Plaintiff financially, and to induce UCSD to breach the oral agreement/contract and or sever its business relationship with Plaintiff.

190.    As a proximate result of Defendants' actions, Plaintiff has suffered damages. Plaintiff seeks said damages, including exemplary and punitive damages. The aforementioned acts of Defendants, and each of them were willful, oppressive, fraudulent, and malicious. These acts entitle Plaintiff to these damages. Plaintiff also seeks for an order requiring Defendants (and each of them) to show cause, if any they have, why they should not be enjoined, during the pendency of this action. Plaintiff also seeks injunctive relief to enjoin Defendants from selling their ownership interests to any party.

///
///
///
///
///
///
///
///
///
///

*COMPLAINT*
**Chao v. HealthSouth Corporation, et al.**

## XVII.

### SEVENTEENTH CAUSE OF ACTION

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

#### (Against Defendant SCA)

191.    On or about August 2007, Plaintiff and a third party, University of California - San Diego (hereinafter "UCSD" or "third party") began a economic relationship. No written contract existed yet because negotiations were still being discussed. However, the terms had already been agreed to regarding the sale. Additionally, Plaintiff was still waiting for the Purchase Agreement between Plaintiff and Defendants to be signed.   Plaintiff agreed to sell UCSD interests in the partnership at issue in exchange for money. UCSD agreed to provide Plaintiff with said money in exchange for the ownership interest.

192.    This existence of this agreement contained future economic benefits to Plaintiff because Plaintiff would have received compensation for the ownership interests it was going to sell, which Plaintiff was initially to buy from Defendants. Plaintiff and UCSD had been negotiating the deal of the sale of the ownership interests for months.

193.    Due to the sale of Defendants' interest in the partnership, Plaintiff had intended selling interests to another third party. Defendants knew of Plaintiff's intentions. Nonetheless, as Defendants and Plaintiff were finalizing the purchase agreement of Defendants' ownership interest, Defendants were going behind Plaintiff's back and negotiating with UCSD, who Plaintiff was already negotiating with regarding the sale of interests. Consequently, at the time Plaintiff and Defendants had agreed on the purchase, Defendants were negotiating to sell the same ownership interests it was selling to Plaintiff (because Defendants were selling the shares at a higher amount to UCSD.)

194.    Defendants knew of the above described negotiations existing between Plaintiff and UCSD. Defendants were already negotiating with UCSD behind Plaintiff's back. Defendants knew of the existence of Plaintiff's negotiations with UCSD because Plaintiff had said something to Defendants during communications with Defendants.

///

///

1    195.    Defendants intentionally began negotiations with UCSD (to sell the same ownership

2    interests that Plaintiff was going to sell to UCSD.) Defendants intentionally and purposefully disrupted

3    the above-described economic relationship.

4    196.    Defendants continued to have several separate communications with both Plaintiff and

5    UCSD regarding the sale of its ownership interest. Throughout the entire time, Defendants intended to

6    harm Plaintiff financially, and to induce UCSD to breach the oral agreement/contract and or sever its

7    business relationship with Plaintiff.

8    197.    Defendants' interference was wrongful. Defendants falsely represented to both parties

9    that they intended on selling their ownership interests to them. Defendants falsely represented to both

10   parties that their intentions were to sell their ownership interests to them only. This constitutes an unfair

11   trade practice in violation of Business and Professions Code Section 17200.

12   198.    The agreement between Defendants and Plaintiff, and the agreement between Plaintiff

13   and the third party has been disrupted. Plaintiff has not obtained ownership interest from Defendants,

14   and therefore has not been able to sell any to the third party. Consequently, the third party has halted

15   contract negotiations with Plaintiff as a result of Defendants' conduct.

16   199.    Defendants acts were a proximate cause of actual damages suffered by Plaintiff. As a

17   proximate result of Defendants' conduct and the severance of contract negotiation between Plaintiff and

18   the third party, Plaintiff has suffered damages.

19   200.    The aforementioned acts of Defendants, and each of them, were willful, oppressive,

20   fraudulent and malicious. Plaintiff is therefore entitled to punitive damages.

21   201.    Defendants threaten to and unless restrained, will continue to threaten interference and

22   disrupt other business relationships between Plaintiff and the other third party. Plaintiff's harm will be

23   great and there will be irreparable injury, for which damages would not afford adequate relief, in that

24   Plaintiff will not be able to be completely compensated for the injury to Plaintiff.

25   ///

26   ///

27   ///

28   ///

202.   As a proximate result of Defendants' actions, Plaintiff has suffered damages. Plaintiff seeks said damages, including exemplary and punitive damages. Plaintiff also seeks for an order requiring Defendants (and each of them) to show cause, if any they have, why they should not be enjoined as set forth below, during the pendency of this action. Plaintiff also seeks injunctive relief to enjoin Defendants from selling their ownership interests to any party.

*WHEREFORE*, Plaintiff prays judgment against Defendants as hereinafter set forth:

1.   For an injunction pursuant to CCP §525, et al. ordering Defendants to cease and desist from making any further Partnership funds available to the possession, use, or control of any other Defendants or their affiliates;

2.   For an order compelling Defendants to place all Partnership funds into separate and traceable trust accounts with an insured financial institution of adequate resources which are controlled by, accessible to, and for the benefit of the Partnership only;

3.   For an order pursuant to CCP §572, et al. ordering the deposit in court or delivery to owner pending suit the assets of the Partnership currently in the possession, use, or control of Defendants or any of their affiliates;

4.   For an order declaring that Defendants hold all assets of the Partnership in their possession, use, or control in trust for the Partnership;

5.   For an order declaring the Medicare anti-kickback statute, 42 U.S.C. §1320a-7b(b), inapplicable to the transaction at issue in the Sales Agreement;

6.   For an order instructing Defendants to transfer and sell, at the market rates established in the Partnership Agreement, enough shares of the Partnership to increase Plaintiff's ownership to 80%;

7.   For an accounting of all funds taken, managed, paid, and received by Defendants on behalf of the Partnership since January, 18 1996;

8.   For general and special damages according to proof;

9.   For punitive damages in an amount to punish Defendants for wrongful conduct and set an example;

10.   For rescission of the Partnership Agreement on the election of the Plaintiff;

*COMPLAINT*
Chao v. HealthSouth Corporation, et al.

1    11.    For rescission of the aforementioned Partnership lease, renegotiated and entered into by

2          Defendants in violation of an agreement to refrain from doing so;

3    12.    For an award of prejudgment interest, at the legal rate and an award of post-judgment

4          interest until the judgment is fully satisfied;

5    13.    For an award of reasonable attorney fees incurred herein;

6    14.    For costs of suit incurred;

7    15.    For Declaration as to the propriety of removal of SHC SD as General Partner;

8    16.    For an order requiring Defendants, and each of them, to show cause, if any they have,

9          why they should not be enjoined as set forth below, during the pendency of this action;

10   17.    For a temporary restraining order, a preliminary injunction, and a permanent injunction,

11          all enjoining Defendants from selling their ownership interests in the partnership; and

12   18.    For such other and further relief as the court may deem proper.

13   *Respectfully Submitted,*

14                                      THE WATKINS FIRM, APC

15   Dated: September 19, 2007

16                                      MARK S. BAGULA, ESQ.
                                       DAVINA A. B. BLOOM, ESQ.
                                       DANIEL W. WATKINS, ESQ.
                                       Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| WILLIAM T. OWENS, | ) |
| Defendant | ) |

RULE 11(f) FACTUAL BASIS FOR GUILTY PLEA

COMES NOW the United States of America through its undersigned counsel, for the purpose of satisfying the requirements of Federal Rule of Criminal Procedure 11(f), submits the following Factual Basis in support of the guilty plea of **WILLIAM T. OWENS**:

1.      Defendant WILLIAM T. OWENS was employed at HealthSouth Corporation. ("*HealthSouth*") since 1986 in various capacities, including Chief Financial Officer from February 2000 to August 2001, President and Chief Operating Officer from August 2001 to August 2002, President and Chief Executive Officer from August 2002 to January 2003 and Executive Vice President and Chief Financial Officer from January 2003 until the present. Defendant **OWENS** is licensed as a certified public accountant.

2.      *HealthSouth* was formed around 1984. Since in or about 1986, when it made its Initial Public Offering (IPO), *HealthSouth* has been an issuer of a class of securities registered under Section 12 of the Securities Exchange Act of 1934, required to file reports under said Act. *HealthSouth*'s common stock was listed on the New York Stock Exchange. *HealthSouth* claims to be the nation's largest provider of outpatient surgery, diagnostic imaging and rehabilitative health care services with approximately 1,800 locations in all 50 states, Puerto Rico, the United

Kingdom, Australia, and Canada. Millions of its shares have been traded since it made its first offering.

3.    Beginning at least in or about 1996, defendant OWENS and *HealthSouth's* current Chief Executive Officer (the "CEO"), other *HealthSouth* senior executives and others recognized that *HealthSouth's* financial results were failing to produce sufficient earnings per share to meet or exceed Wall Street "earning expectations" or "analyst expectations." The difference between *HealthSouth's* true and correct earnings per share and the Wall Street expectations was referred to internally at *HealthSouth* as the "gap" or the "hole." The CEO, defendant OWENS, and others recognized that the earnings shortfall created a substantial risk that unless *HealthSouth's* earnings per share were artificially improved, *HealthSouth's* earnings would fail to meet analyst expectations and the market price of *HealthSouth's* securities would therefore decline. The value of stock options owned by, and bonuses paid to certain *HealthSouth* senior officials, including the CEO, depended, in part, on *HealthSouth* meeting earnings projections.

4.    The CEO, defendant OWENS, and others agreed to engage in an illegal scheme to inflate artificially *HealthSouth's* publicly reported earnings and earnings per share and to falsify reports of *HealthSouth's* financial condition. Defendant OWENS presented the CEO with financial information, which would ordinarily be reflected in monthly and quarterly reports that were to be made available to the public through the SEC filings. When those reports showed that the company did not or would not meet market ("Wall Street") expectations, the CEO demanded that the reports be changed to meet or exceed those expectations.

5.    The CEO and defendant OWENS issued instructions as to the desired earnings per share number and *HealthSouth's* accounting staff met to discuss ways to inflate artificially *HealthSouth's* earnings in order to meet the Wall Street earnings expectations. These meetings were known as "family" meetings and the attendees were known as the "family." At the meetings the "family" members discussed how members of the accounting staff would falsify *HealthSouth's* books to fill the "gap" or "hole" and meet the desired earnings.

6.    Defendant OWENS and others made and caused to be made false and fraudulent entries in *HealthSouth's* books and records for the purpose of inflating artificially *HealthSouth's* earnings and earnings per share. Methods used for artificially inflating *HealthSouth's* earnings and earnings per share included falsifying the "contractual adjustment" account and decreasing other expenses. After manipulating the "contractual adjustment" and other expense accounts to artificially inflate revenue on the Income Statement, corresponding fraudulent adjustments were made to increase assets and decrease in liabilities on *HealthSouth's* Balance Sheet. Thus, false and fraudulent entries were made to accounts in *HealthSouth's* books and records including, but not limited to, the: (1) Property, Plant and Equipment ("PP&E") account; (2) cash account; (3) inventory account; and (4) intangible asset (goodwill) accounts. Each of these accounts were reported in *HealthSouth's* Balance Sheets. As defendant OWENS and his co-conspirators well knew, there was no justification in fact, or under GAAP, for these entries.

7.    Defendant OWENS became aware that *HealthSouth's* accounting personnel designed the fictitious accounting entries to avoid their detection. For example, if the accounting staff decided to increase inventories, it would increase inventory accounts at various *HealthSouth* facilities by different false amounts because they knew that if amounts were increased uniformly,

3

suspicions of the auditors might be raised. In addition, since the *HealthSouth* accounting staff

knew that auditors questioned additions to the PP&E account that exceeded a certain threshold,

the bogus additions to PP&E at a particular facility were kept below the threshold.

       8.    Defendant OWENS and others made and caused to be made false and fraudulent

journal entries in *HealthSouth's* books and records knowing and intending (1) that such journal

entries would ultimately be reflected in *HealthSouth's* financial statements and public filings

with the SEC; (2) that *HealthSouth's* financial statements and public filings would falsely

overstate *HealthSouth's* revenue, earnings and earnings per share; and (3) that the investing

public would rely upon such overstated earnings.

       9.    Defendant OWENS, the CEO and others caused *HealthSouth* to file publicly with

the SEC annual reports and quarterly reports that materially misstated, among other things,

*HealthSouth's* net income, revenue, earnings per share, assets, and liabilities from at least 1999

until the present. As a result of the scheme, *HealthSouth's* revenue and earnings were inflated by

hundreds of millions of dollars on publicly filed reports. For example, the Balance Sheet

included in *HealthSouth's* 10-Q for the second quarter of 2002 overstated gross PP&E by

approximately $1 billion, or approximately 53% of the total PP&E reported. The amount of cash

on the same 10-Q was overstated by more than $300 million and *HealthSouth's* total gross assets

were overstated by more than $1.5 billion.

       10.    In or about August 2002, in order to cover up and conceal the materially false and

misleading financial information which *HealthSouth* had provided to the SEC and the public in

the past, the CEO, defendant OWENS, and the Chief Financial Officer (the "CFO") at that time,

met and discussed the need for the CFO to sign and file with the SEC a statement which would

falsely certify that *HealthSouth's* financial statements fairly presented, in all material respects, the financial condition and results of *HealthSouth*.

11.     The CEO, defendant OWENS, and the CFO also agreed that the CFO would sign and cause to be filed with the SEC a statement certifying that *HealthSouth's* 10-Q for the second quarter of 2002 fairly presented, in all material respects, the financial condition and results of *HealthSouth*, when in truth and fact, they knew that the 10-Q contained materially false and misleading information.

12.     On or about August 14, 2002, defendant OWENS wilfully caused to be transmitted by wire from Birmingham, Alabama to the SEC, in Washington, D.C., the 1350 statement certifying that *HealthSouth's* 10-Q for the second quarter of 2002 fairly presented, in all material respects, the financial condition and results, when in truth and fact, he knew that the 10-Q contained materially false and misleading information. This document was signed by the CEO and the CFO who also knew that the periodic report attached to the 1350 statement, *HealthSouth's* second quarter 10-Q, contained materially false information.

13.     Defendant OWENS wilfully and knowingly caused to be signed and transmitted by wire from Birmingham, Alabama to Washington, D.C. for delivery to the SEC other reports of *HealthSouth's* financial results and financial condition which he knew to contain materially false information or which omitted material information. These included the above- referenced 10-Q for the second quarter of 2002 and *HealthSouth's* 10-Q for the third quarter of 2001 which was filed on or about November 13, 2001.

14.    This document does not set forth the complete and full extent of defendant OWENS' knowledge about criminal activity at HealthSouth, but is intended only to provide a factual basis for his plea of guilty to an Information filed against him by the government.


_____
ALICE H. MARTIN
United States Attorney
Northern District of Alabama

JOSHUA R. HOCHBERG
Chief, Fraud Section
Criminal Division
    United States Department of Justice


              by:   _____
_____
GEORGE A. MARTIN
Assistant United States Attorney
Northern District of Alabama

RICHARD C. SMITH
Deputy Chief, Fraud Section
Criminal Division
United States Department of Justice


_____
MIKE RASMUSSEN
Assistant United States Attorney
Northern District of Alabama

RICHARD N. WIEDIS
    Senior Trial Attorney, Fraud Section
Criminal Division
    United States Department of Justice

6

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

<u>SOUTHERN DIVISION</u>

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| WILLIAM T. OWENS, | ) |
| Defendant | ) |

<u>PLEA AGREEMENT AND CONDITIONS</u>

The United States of America ("United States"), WILLIAM T. OWENS ("Defendant")

and Defendant's attorney each hereby acknowledge the following to be the plea agreement

between the Defendant and the United States and the conditions and understandings that apply to

the agreement:

I. <u>PLEA AGREEMENT</u>:  The United States and the Defendant hereby AGREE to the

following:

(a)   <u>Plea</u>: Defendant will waive indictment and plead guilty in the Northern District of
Alabama to an information charging him with one count each of conspiracy to
commit wire fraud and securities fraud (18 U.S.C. § 371), willfully certifying a
false periodic financial report (18 U.S.C. § 1350), wire fraud (18 U.S.C. § 1343)
and criminal forfeiture (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)).

(b)   <u>Recommendation</u>: Pursuant to Rule 11(e)(1)(B) of the *Federal Rules of Criminal
Procedure*, and upon the Court's acceptance of the aforesaid plea and entry of
judgment on the same, the United States will recommend that the Defendant be
given a three-level reduction for acceptance of responsibility and be sentenced at
the low end of the sentencing guideline range as determined by the court and
recommend that the sentence as to each count run concurrently.

(c)          <u>Motion for Downward Departure</u>:  If the United States determines that the
Defendant has cooperated fully, provided substantial assistance in the
investigation or prosecution of another person who has committed an offense, and
otherwise complied with the terms of this agreement, the United States will file a

motion pursuant to *United States Sentencing Guidelines* § 5K1.1 and 18 U.S.C. §
3553(e) with the sentencing Court setting forth the nature and extent of his

cooperation. Such a motion will permit the Court, in its discretion, to impose a sentence below the applicable Sentencing Guidelines range and also below any applicable mandatory minimum sentence. In this connection, it is understood that a good faith determination by the United States as to whether Defendant has cooperated fully and provided substantial assistance and has otherwise complied with the terms of this agreement, and the United States' good faith assessment of the value, truthfulness, completeness and accuracy of the cooperation, shall be binding upon him. Defendant agrees that, in making this determination, the United States may consider facts known to it at this time. The United States may or may not, in its discretion, recommend to the Court a specific sentence to be imposed. The United States cannot and does not make a promise or representation as to what sentence will be imposed by the Court. The determination of whether to file a motion for downward departure is in the sole discretion of the United States Attorney for the Northern District of Alabama or her designated Assistant United States Attorney.

II. <u>CONDITIONS AND UNDERSTANDINGS:</u> The following conditions and understandings apply to the above stated plea agreement:

<u>AGREEMENT TO MAKE RESTITUTION</u>

The Court can order the Defendant to pay restitution for the full loss caused by Defendant's criminal conduct. The Defendant agrees the Court's consideration of the amount of restitution shall **NOT** be limited to the amounts alleged in the counts to which the Defendant is pleading guilty, and may include all amounts attributable to the Defendant's conduct, whether charged or uncharged, pursuant to 18 U.S.C. §3663, provided, however, that the value of any property forfeited shall be credited against any order of restitution. The Defendant further agrees that any amount ordered by the Court to be paid as restitution may not be discharged, in whole or in part, in any bankruptcy proceeding.

The Defendant acknowledges that, because the offense of conviction occurred after April 24, 1996, restitution is mandatory without regard to the Defendant's ability to pay.

2

## ASSET FORFEITURE

As stated in Paragraph I(a), above, the Defendant hereby agrees to surrender to the United States of America any and all property constituting, or derived from proceeds traceable to violations of Title 18, United States Code, Section 371 on or before the date of sentencing in this action, and further consents to the entry of an order of criminal forfeiture herein of said property at that time under Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as property constituting or derived from proceeds traceable to violations of Title 18, United States Code, Section 371. Defendant further agrees to waive any and all claims, defenses or challenges, and to not contest or challenge in any manner (including direct appeal or any other means) any related administrative or civil judicial forfeiture on any grounds, including that the forfeiture constitutes double jeopardy, or an excessive fine or punishment. The defendant will cooperate fully with investigations of his financial assets, including cooperation in the tracing all of the defendant's assets.

## POSSIBLE SENTENCES AND THE GUIDELINES

(a) <u>Maximum Possible Sentences</u>:   The Defendant acknowledges that the maximum statutory sentence for conspiracy under Title 18, United States Code, Section 371 is not more than 5 years imprisonment and/or a fine not to exceed $250,000, or twice the pecuniary gain/loss caused by the Defendant's act. Additionally, the Defendant is aware, if imprisonment is imposed, that the Court may include as part of the sentence a requirement that the Defendant be placed on supervised release after imprisonment for a term not to exceed three (3) years.

The Defendant further acknowledges that the maximum statutory sentence for willful and knowing certification of false financial reports under Title 18, United States Code, Section 1350

3

is not more than 20 years imprisonment and/or a fine not to exceed $5,000,000, or twice the pecuniary gain/loss caused by the Defendant's act. Additionally, the Defendant is aware, if imprisonment is imposed, that the Court may include as part of the sentence a requirement that the Defendant be placed on supervised release after imprisonment for a term not to exceed three (3) years.

The Defendant further acknowledges that the maximum statutory sentence for wire fraud under Title 18, United States Code, Section 1343 is not more than 5 years imprisonment and/or a fine not to exceed $250,000, or twice the pecuniary gain/loss caused by the Defendant's act. Additionally, the Defendant is aware, if imprisonment is imposed, that the Court may include as part of the sentence a requirement that the Defendant be placed on supervised release after imprisonment for a term not to exceed three (3) years.

If the term of supervised release for the count of conviction is revoked, the Defendant may be imprisoned for an additional term not to exceed the term of imprisonment authorized in Title 18, United States Code, Section 3583(e)(3) for the offense of conviction, with no credit being given for any time served while on supervised release. Further, if the crime of conviction occurred after September 13, 1994, the Court may impose another term of supervised release following any term of imprisonment imposed for a violation of supervised release conditions, and this term of supervised release may not exceed the term of supervised release originally authorized by statute for the offense of conviction less any term of imprisonment that was imposed upon revocation of supervised release. (18 U.S.C. §3583(e) and (h)). If a second or subsequent term of supervised release is revoked, the Court may impose another term of imprisonment not to exceed the difference between any imprisonment imposed for a prior

revocation of supervised release for the offense of conviction and the term of imprisonment authorized pursuant to Title 18, United States Code, Section 3583(e)(3). Accordingly, the original term of imprisonment when combined with any term of imprisonment arising from revocations of supervised release, may result in a total amount of imprisonment greater than the statutory maximum term for the offense of conviction.

(b) <u>Special Assessment Fees</u>: The Defendant hereby agrees to pay the total amount required for the Special Monetary Assessment ($100 per felony count) to the Clerk, United States District Court, at the time of sentencing.

(c) <u>Sentencing Guidelines</u>: The Defendant is aware that the sentence to be imposed shall be in conformity with the Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §3551 through §3742, and 28 U.S.C. §991 through §998, and that a sentence imposed under the Guidelines is without parole. The Defendant is further aware that the sentence has not yet been determined by the Court, that any estimate of the likely sentence received from any source is a prediction, not a promise, and that the Court has the final discretion to impose any sentence up to the statutory maximum. The Defendant further understands that all recommendations or requests by the United States pursuant to this agreement are not binding upon the Court (Sentencing Guidelines §6B1.4(d)). The Court will impose a sentence within the appropriate guideline range, unless the Court finds there is a basis for departure because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. The Court may also depart from the guidelines if there is a motion from the

5

United States stating that the Defendant has provided substantial assistance in the investigation or prosecution of another person who has committed a criminal offense.

If the sentencing court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, but will remain bound to fulfill all of the obligations under the agreement.

Nothing in the plea agreement, save and except any stipulations contained herein, limits the right of the United States to present to the Court or Probation Office, either orally or in writing, any and all facts and arguments relevant to the Defendant's sentence and the Defendant's criminal history category, that are available to the United States at the time of sentencing. The United States reserves its full right of allocution pursuant to Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure.

The Defendant further understands that the sentence to be imposed upon the Defendant will be determined solely by the sentencing judge. The United States cannot and does not make any promise or representation as to what sentence the Defendant will receive.

(d) Non-binding: It is the Court's duty to impose sentence. The Court is not a party to the above plea agreement. Any sentence recommendation by the United States does not bind the Court, and the Court may impose a more severe or less severe sentence than that recommended.

<u>WITHDRAWAL OF GUILTY PLEA NOT ALLOWED</u>

If the Court decides not to give the recommended sentence, or decides that the recommended sentence is not within the guidelines range, the Defendant may not withdraw the plea of guilty.

<u>FAMILIARITY WITH CHARGES</u>

6

The Defendant is aware of the charges, and has discussed the charges and possible defenses with counsel. The Defendant is fully aware of the elements of each count.

## ACKNOWLEDGMENT OF GUILT

The Defendant is pleading guilty to the charges described above because the Defendant is in fact guilty and for no other reason.

## COOPERATION - IN GENERAL

The Defendant will cooperate fully with the United States and with any federal, state or local law enforcement or regulatory agency designated by the United States Attorney, including, but not limited to, the Securities and Exchange Commission. This cooperation will include, but is not limited to, the following:

(a)    Defendant agrees to be fully debriefed and to attend all meetings at which his presence is requested by the United States, concerning his participation in and knowledge of all criminal activities.

(b)    Defendant waives all claims of attorney-client privilege and agrees to furnish to the United States all documents and other material that may be relevant to the investigation and that are in Defendant's possession or control, except privileged communications relating to the investigation by the United States, and waives his right to move to suppress evidence or raise any other Fourth or Fifth Amendment claims, and waives his right to any further discovery from the government.

(c)    Defendant agrees not to reveal his cooperation, or any information derived therefrom to any third party without prior consent of the United States, and to instruct his attorneys to do the same.

(d)    Defendant agrees to testify at any proceeding in the Northern District of Alabama or elsewhere as requested by the United States.

(e)    Defendant consents to adjournments of his sentence as requested by the United States and agrees that his obligations under this agreement continue until the United States determines that his cooperation is concluded.

## WAIVER OF CERTAIN CONSTITUTIONAL RIGHTS

7

The Defendant understands that by pleading guilty, the following constitutional rights will be relinquished: the right to be indicted by a grand jury, if proceeding by information; the right to plead not guilty; the right to be tried by a jury or, if the Defendant wishes and with the consent of the United States, to be tried by a judge. At that trial, the Defendant would have the right to an attorney and, if the Defendant could not afford an attorney, the Court would appoint one to represent the Defendant. The Defendant would have the right to assist in the selection of the jury. During the trial, the Defendant would be presumed innocent and a jury would be instructed that the burden of proof is on the United States to prove the Defendant guilty beyond a reasonable doubt and by a unanimous verdict. The Defendant would have the right to confront and cross-examine witnesses against the Defendant. If desired, the Defendant could testify on his own behalf and present witnesses in his own defense. On the other hand, if the Defendant did not wish to testify, that fact could not be used against him and the jury would be so instructed. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal that verdict to determine if any errors had been committed during trial that would require either a new trial or a dismissal of the charges.

By pleading guilty, the Defendant will be giving up all of these rights. By pleading guilty, the Defendant may be required to answer questions posed to him by the Court both about the rights that the Defendant will be giving up and the factual basis for the Defendant's plea. Any statements made by the Defendant during such a hearing are not, in any civil or criminal proceeding, admissible against Defendant except as provided Rule 11(e)(6) of the *Federal Rules of Criminal Procedure*.

Rule 11(e)(6) of the *Federal Rules of Criminal Procedure*

The Defendant knowingly and expressly waives all of the rights afforded Defendant pursuant to the provisions of Rule 11(e)(6) of the *Federal Rules of Criminal Procedure* and Section 1B1.8(a) of the United States Sentencing Guidelines in the event, and only in the event, that, after he enters a plea of guilty pursuant to this agreement, the Defendant then moves to withdraw his plea of guilty and the court grants his motion. In that event, the following shall be admissible against the Defendant:

  (a) Plea of guilty which is later withdrawn or which the Defendant seeks to withdraw;

  (b) Any statement made in the course of any proceeding under Rule 11 regarding said plea of guilty;

  (c) Any statement made in the course of plea discussions with an attorney or agent for the United States which result in a plea of guilty later withdrawn. The parties expressly agree that, if the court rejects this plea agreement, the above waiver will not apply and the Defendant will have all the rights and protections afforded him by Rule 11(e)(6).

## APPEAL AND COLLATERAL ATTACK

Defendant is aware that his sentence will be imposed in accordance with the United States Sentencing Commission's *Guidelines Manual*. Defendant nonetheless acknowledges and agrees that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense(s) to which Defendant pleads guilty. Defendant is aware that Title 18, United States Code, Section 3742, affords a defendant the right to appeal the sentence

imposed. This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b).

Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence Defendant will receive.

Defendant's right to file a motion attacking his sentence pursuant to 28 U.S.C. § 2255 has also been explained to him and he understands that right. In exchange for the concessions made by the United States in this plea agreement, Defendant knowingly waives his right to challenge his conviction and sentence pursuant to 28 U.S.C. § 2255.

## BANKRUPTCY WAIVER

For a period of 10 years following the date of this agreement, Defendant:

(1) agrees not to attempt to avoid paying any criminal fine or restitution imposed by the Court through any proceeding pursuant to the United States Bankruptcy Code; and (2) waives all rights, if any, to obtain discharge of any criminal fine or restitution obligation or alter the time for payment by filing a petition pursuant to the Bankruptcy Code. Defendant stipulates that enforcement of any fine or restitution obligation by the United States is not barred or affected by the automatic stay provisions of the United States Bankruptcy Code (Title 11, United States Code, Section 362), and that enforcement of any fine or restitution obligation by the United States is a valid exercise of its police or regulatory power within the meaning of Title 11, United

10

States Code, Section 362(b). Defendant stipulates and agrees not to institute or participate in any proceeding to interfere with, alter, or bar enforcement of any fine or restitution obligation pursuant to the automatic stay or other provision of the Bankruptcy Code in any case filed by Defendant or his creditors. Upon request of the United States, Defendant will execute an order or stipulation granting the United States relief from the automatic stay or other Bankruptcy Code provisions in order to enforce any fine or restitution obligation. Defendant stipulates that any fine or restitution obligation imposed by the Court is not dischargeable pursuant to Title 11, United States Code, Section 523 in any case commenced by Defendant or his creditors pursuant to the Bankruptcy Code. Defendant's waivers and stipulations or agreements set forth above are made in exchange for the United States' concessions set forth in this agreement.

## COUNSEL

The Defendant has discussed this case at length with Defendant's counsel. The Defendant is satisfied with counsel's investigation of the case, exploration of possible defenses, advice and other representation.

## OTHER DISTRICTS AND JURISDICTIONS

This document **DOES NOT BIND** any other United States Attorney in any other district, and it in no way limits, binds, or otherwise affects the rights, powers, duties or obligations of any state or local law enforcement agency, administrative or regulatory authorities, civil or administrative enforcement, collection, bankruptcy, adversary proceedings or suits which have been or may be filed by any governmental entity.

## TAX PROCEEDINGS

Unless otherwise specified herein, this document in no way applies to or limits any pending or prospective proceedings, related to the Defendant's tax liabilities, if any.

## BREACH OF AGREEMENT

In the event either party believes the other has failed to fulfill any obligations under this agreement, then the complaining party shall, in its discretion, have the option of petitioning the Court to be relieved of its obligations herein. Whether or not a party has completely fulfilled all of its obligations under this agreement shall be determined by the Court in an appropriate proceeding at which any disclosures and documents provided by either party shall be admissible and at which the complaining party shall be required to establish any breach by a preponderance of the evidence. The Defendant hereby **WAIVES** all rights pursuant to Rule 32(e), *Federal Rules of Criminal Procedure*, to withdraw from Defendant's guilty plea and this agreement, save and except for the limited reasons outlined above in this paragraph.

In the event that the Defendant, after entry of a plea of guilty, unsuccessfully attempts to withdraw his plea of guilty, the United States may continue to enforce the agreement but will no longer be bound by any provision in this agreement regarding acceptance of responsibility. This provision will not have any continued vitality if it is determined by the Court that the United States acted in bad faith to bring about the attempted withdrawal of plea.

## COMPETENCE

The Defendant has not had any drugs, medication or alcohol within the past 48 hours except as stated hereafter, and is competent to enter the plea agreement stated above.

## COMPLETE AGREEMENT

12

Other than what is contained in this document, NO PROMISES, OR REPRESENTATIONS HAVE BEEN MADE TO THE DEFENDANT BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED, TO INDUCE THE DEFENDANT TO PLEAD GUILTY. This document represents the sole agreement and understanding between the Defendant and the United States, and no other agreement will be entered into unless memorialized in writing and signed by all parties. To become effective, this agreement must be signed by all signatories listed below.

## ACKNOWLEDGMENTS

1.  I have READ this document, DISCUSSED it with my attorney, and UNDERSTAND and AGREE with all its provisions both individually and totally.

_____          _____
                                                    DATE
                                                    WILLIAM T. OWENS
                                                    Defendant

2.  I have discussed this case with the Defendant in detail and have advised the Defendant of the Defendant's rights and all possible defenses. The Defendant has conveyed to me that the Defendant understands this document and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case. I concur in the entry of the plea as indicated above and on the terms and conditions set forth herein.

_____          _____
                                                    DATE
                                                    FREDERICK G. HELMSING
                                                    Counsel for Defendant

13

3.    I have reviewed this document and agree to its provisions.


_____

JOSHUA R. HOCHBERG
Chief, Fraud Section
Criminal Division
United States Department of Justice

ALICE H. MARTIN
United States Attorney
Northern District of Alabama

_____
_____
_____
_____
_____
_____
_____
_____
_____

by
:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

GEORGE A. MARTIN
RICHARD C. SMITH
Assistant United
States
Attorney

Deputy
Chief,
Fraud
Section

Northern District of Alabama

Criminal Division
United States Department of Justice

—
—
—
—
—
—
—
—
—
—

—
—
—
—
—
—
—
—
—
—
—
—
—
—
—

MIKE RASMUSSEN
WIEDIS

RICHARD N.

15

Assistant United States Attorney
Senior Trial Attorney, Fraud Section
Northern District of Alabama                    Criminal
Division
United States Department of Justice

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MALCOLM MCVAY | ) | |

RULE 11(f) FACTUAL BASIS FOR GUILTY PLEA

COMES NOW the United States of America through its undersigned counsel, for the purpose of satisfying the requirements of Federal Rule of Criminal Procedure 11(f), and submits the following Factual Basis in support of the guilty plea of MALCOLM MCVAY:

*HealthSouth*

1.    *HealthSouth Corporation* ("*HealthSouth*") was formed in 1984. *HealthSouth* is the nations largest provider of outpatient surgery, diagnostic imaging, and rehabilitative health care services with approximately 1800 locations in all 50 state and abroad. Since approximately 1988 until March 2003, *HealthSouth*'s common stock was listed on the New York Stock Exchange. Many of its executives, including its then Chief Executive Officer ("CEO"), either owned shares in *HealthSouth*, or owned options to such shares. The CEO, and others, were also compensated in part by bonuses. The bonuses depended on how well *HealthSouth* performed financially.

3.    *HealthSouth*, like other companies whose shares were publically traded, generated and publicized earnings expectations. Stock market analysts did the same. Whether a company met, exceeded, or failed to meet such expectations, was often a factor the influenced the price of its shares.

4.    Since in or about 1986, when it made its Initial Public Offering (IPO), *HealthSouth* has been an issuer of a class of securities registered under Section 12 of the Securities Exchange Act of 1934, required to file quarterly and annual statements (Forms 10-Q and Forms 10K) under said Act with the Securities Exchange Commission ("SEC"). These



statements reported *HealthSouth's* earnings, as well as the value of its assets and liabilities. These reports were available to the public, which used them to determine whether *HealthSouth* met the aforesaid expectations.

5.     Under provisions of the federal securities laws and the regulations promulgated thereunder, HealthSouth was also required to make and keep books, records, and accounts that accurately and fairly reflected the transactions and dispositions of the company's assets; and to devise and maintain a system of internal accounting controls sufficient to provide – (i) reasonable assurances that the company's transactions were recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles ("GAAP") and other criteria applicable to such statements and to maintain the accountability of assets; and (ii) reasonable assurances that the recorded accountability for assets was compared with the existing assets at reasonable intervals and appropriate action was taken with respect to any differences.

### The Conspiracy.

6.     Beginning at least in 1994, the CEO and Senior Officers at *HealthSouth* conspired to inflate the financial statements filed with the SEC, at least some of which were electronically transmitted from the Northern District of Alabama to Washington, D.C., to defraud investors and *HealthSouth*, and to make false entries in *HealthSouth's* books, records, and accounts.

7.     *HealthSouth's* CEO and other Senior Officers reviewed monthly and quarterly preliminary reports showing *HealthSouth's* true and actual financial results, which usually showed that *HealthSouth* had not met earnings per share expectations.   These Senior Officers would then direct that *HealthSouth's* accounting staff to manipulate HealthSouth's books, accounts and records to ensure that *HealthSouth's* earnings per share number met or exceeded those expectations.

8.     Methods to increase earnings included making entries to reduced offsets against revenues or to reduce expenses. Corresponding fraudulent entries were made to increase assets and decrease liabilities on *HealthSouth's* Balance Sheet. Such entries were made in, among other accounts, *HealthSouth's* (1) Property, Plant and Equipment ("PP&E") accounts; (2) cash

accounts; (3) inventory accounts; and (4) intangible asset (goodwill) accounts.

9.     These entries caused the quarterly and annual financial statements filed with the SEC for the years from before 1994 through 2002, that is, Forms 10-Q and Forms 10K, to be materially false. The cumulative inflations summed to billions of dollars. Some of these statements were transmitted electronically from Birmingham, Alabama to Washington, D.C., to be filed with the SEC.

10.    The then CEO and other conspirators benefitted from the conspiracy by receiving salaries, bonuses, and an increased value in their stock and stock options. The investing public suffered to the extent they paid for shares whose value was inflated by the aforesaid conspiracy.

<u>The Defendant</u>

11.    Defendant McVay received a Masters of Business Administration degree in 1987. After working in the banking industry as a commercial lender and as CFO for another company, he went to work for *HealthSouth* as a Vice President in the Finance Department in 1999. In September 2000, McVay was promoted to Senior Vice President and Treasurer. From August 2002 until January 2003, McVay was *HealthSouth's* CFO and Treasurer. McVay currently serves as *HealthSouth's* Treasurer.

12.    Shortly after becoming CFO in August 2002, McVay was told that revenue had been materially overstated in prior quarters and that cash was materially overstated on the balance sheet. McVay understood that these fraudulent entries had been made to artificially inflate earnings and earnings per share.

13.    On or about November 14, 2002, McVay signed *HealthSouth's* 10-Q for the third quarter of 2002 knowing that it did not fairly present, in all material respects, the financial condition and results of operations at *HealthSouth*.

14.    On or about November 14, 2002, *HealthSouth's* Form 10-Q for the third quarter of 2002 was transmitted by wire in interstate commerce from Birmingham, Alabama, to Washington, D.C., for filing with the SEC.

15.    Prior to the filing of *HealthSouth's* 10-Q for the third quarter of 2002, and thereafter, McVay had conversations with the person who had long been the Chairman of the

3

Board and CEO of *HealthSouth* regarding the overstatement of cash on *HealthSouth's* balance sheet.

16.      This document does not set forth the complete and full extent of defendant MCVAY'S knowledge about criminal activity at *HealthSouth*, but is intended only to provide a factual basis for his guilty plea to an Information filed against him by the United States.


ALICE H. MARTIN
United States Attorney
Northern District of Alabama

JOSHUA R. HOCHBERG
Chief, Fraud Section
Criminal Division
United States Department of Justice


by:

GEORGE A. MARTIN
Assistant United States Attorney
Northern District of Alabama

RICHARD SMITH
Deputy Chief, Fraud Section
Criminal Division
United States Department of Justice


MIKE RASMUSSEN
Assistant United States Attorney
Northern District of Alabama

4

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

<u>SOUTHERN DIVISION</u>

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| MALCOLM MCVAY, | ) |
| Defendant | ) |

<u>PLEA AGREEMENT AND CONDITIONS</u>

The United States of America ("United States"), MALCOLM MCVAY ("Defendant")

and Defendant's attorney each hereby acknowledge the following to be the plea agreement

between the Defendant and the United States and the conditions and understandings that apply to

the agreement:

I.  <u>PLEA AGREEMENT</u>:  The United States and the Defendant hereby AGREE to the

following:

(a)  <u>Plea</u>: Defendant will waive indictment and plead guilty in the Northern District of
     Alabama to an information charging him with one count each of conspiracy to
     commit wire fraud and securities fraud (18 U.S.C. § 371), false certification of
     financial information filed with the SEC (18 U.S.C. §§ 1350 and 2), and criminal
     forfeiture (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)).

(b)  <u>Recommendation</u>:  Pursuant to Rule 11(e)(1)(B) of the Federal Rules of Criminal
     Procedure, and upon the Court's acceptance of the aforesaid plea and entry of
     judgment on the same, the United States will recommend that the Defendant be
     given a three-level reduction for acceptance of responsibility and be sentenced at
     the low end of the sentencing guideline range as determined by the court.

(c)  <u>Motion for Downward Departure</u>:  If the United States determines that the
     Defendant has cooperated fully, provided substantial assistance in the
     investigation or prosecution of another person who has committed an offense, and
     otherwise complied with the terms of this agreement, the United States will file a
     motion pursuant to *United States Sentencing Guidelines* § 5K1.1 and 18 U.S.C. §
     3553(e) with the sentencing Court setting forth the nature and extent of his
     cooperation.  Such a motion will permit the Court, in its discretion, to impose a
     sentence below the applicable Sentencing Guidelines range and also below any
     applicable mandatory minimum sentence.  In this connection, it is understood that



a good faith determination by the United States as to whether Defendant has cooperated fully and provided substantial assistance and has otherwise complied with the terms of this agreement, and the United States' good faith assessment of the value, truthfulness, completeness and accuracy of the cooperation, shall be binding upon him. Defendant agrees that, in making this determination, the United States may consider facts known to it at this time. The United States may or may not, in its discretion, recommend to the Court a specific sentence to be imposed. The United States cannot and does not make a promise or representation as to what sentence will be imposed by the Court. The determination of whether to file a motion for downward departure is in the sole discretion of the United States Attorney for the Northern District of Alabama or her designated Assistant United States Attorney.

II. CONDITIONS AND UNDERSTANDINGS: The following conditions and understandings apply to the above stated plea agreement:

## AGREEMENT TO MAKE RESTITUTION

The Court can order the Defendant to pay restitution for the full loss caused by Defendant's criminal conduct. The Defendant agrees the Court's consideration of the amount of restitution shall NOT be limited to the amounts alleged in the counts to which the Defendant is pleading guilty, and may include all amounts attributable to the Defendant's conduct, whether charged or uncharged, pursuant to 18 U.S.C. §3663, provided, however, that the value of any property forfeited shall be credited against any order of restitution. The Defendant further agrees that any amount ordered by the Court to be paid as restitution may not be discharged, in whole or in part, in any bankruptcy proceeding.

The Defendant acknowledges that, because the offense of conviction occurred after April 24, 1996, restitution is mandatory without regard to the Defendant's ability to pay.

2

## ASSET FORFEITURE

As stated in Paragraph I(a), above, the Defendant hereby agrees to surrender to the United States of America any and all property constituting, or derived from proceeds traceable to violations of Title 18, United States Code, Section 371 on or before the date of sentencing in this action, and further consents to the entry of an order of criminal forfeiture herein of said property at that time under Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as property constituting or derived from proceeds traceable to violations of Title 18, United States Code, Section 371, without further notice to him. Defendant further agrees to waive any and all claims, defenses or challenges, and to not contest or challenge in any manner (including direct appeal or any other means) any related administrative or civil judicial forfeiture on any grounds, including that the forfeiture constitutes double jeopardy, or an excessive fine or punishment. The defendant will cooperate fully with investigations of his financial assets, including cooperation in the tracing all of the defendant's assets.

## POSSIBLE SENTENCES AND THE GUIDELINES

(a) <u>Maximum Possible Sentences</u>:  The Defendant acknowledges that the maximum statutory sentence for conspiracy under Title 18, United States Code, Section 371 is not more than 5 years imprisonment and/or a fine not to exceed $250,000, or twice the pecuniary gain/loss caused by the Defendant's act. Additionally, the Defendant is aware, if imprisonment is imposed, that the Court may include as part of the sentence a requirement that the Defendant be placed on supervised release after imprisonment for a term not to exceed three (3) years.

The Defendant further acknowledges that the maximum statutory sentence for knowing false certification of financial information filed with the SEC, in violation of Title 18, United States Code, Sections 1350 and 2 is not more than 10 years imprisonment and/or a fine not to

3

exceed $1,000,000, or twice the pecuniary gain/loss caused by the Defendant's act. Additionally, the Defendant is aware, if imprisonment is imposed, that the Court may include as part of the sentence a requirement that the Defendant be placed on supervised release after imprisonment for a term not to exceed three (3) years.

If the term of supervised release for the count of conviction is revoked, the Defendant may be imprisoned for an additional term not to exceed the term of imprisonment authorized in Title 18, United States Code, Section 3583(e)(3) for the offense of conviction, with no credit being given for any time served while on supervised release. Further, if the crime of conviction occurred after September 13, 1994, the Court may impose another term of supervised release following any term of imprisonment imposed for a violation of supervised release conditions, and this term of supervised release may not exceed the term of supervised release originally authorized by statute for the offense of conviction less any term of imprisonment that was imposed upon revocation of supervised release. (18 U.S.C. §3583(e) and (h)). If a second or subsequent term of supervised release is revoked, the Court may impose another term of imprisonment not to exceed the difference between any imprisonment imposed for a prior revocation of supervised release for the offense of conviction and the term of imprisonment authorized pursuant to Title 18, United States Code, Section 3583(e)(3). Accordingly, the original term of imprisonment when combined with any term of imprisonment arising from revocations of supervised release, may result in a total amount of imprisonment greater than the statutory maximum term for the offense of conviction.

(b) Special Assessment Fees: The Defendant hereby agrees to pay the total amount required for the Special Monetary Assessment ($100 per felony count) to the Clerk, United States District Court, at the time of sentencing.

CR

Case 3:07-cv-02408-DMS-LSP   Document 4   Filed 12/20/2007   Page 99 of 109

(c) <u>Sentencing Guidelines</u>: The Defendant is aware that the sentence to be imposed shall be in conformity with the Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §3551 through §3742, and 28 U.S.C. §991 through §998, and that a sentence imposed under the Guidelines is without parole. The Defendant is further aware that the sentence has not yet been determined by the Court, that any estimate of the likely sentence received from any source is a prediction, not a promise, and that the Court has the final discretion to impose any sentence up to the statutory maximum. The Defendant further understands that all recommendations or requests by the United States pursuant to this agreement are not binding upon the Court (Sentencing Guidelines §6B1.4(d)). The Court will impose a sentence within the appropriate guideline range, unless the Court finds there is a basis for departure because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. The Court may also depart from the guidelines if there is a motion from the United States stating that the Defendant has provided substantial assistance in the investigation or prosecution of another person who has committed a criminal offense.

If the sentencing court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, but will remain bound to fulfill all of the obligations under the agreement.

Nothing in the plea agreement, save and except any stipulations contained herein, limits the right of the United States to present to the Court or Probation Office, either orally or in writing, any and all facts and arguments relevant to the Defendant's sentence and the Defendant's criminal history category, that are available to the United States at the time of sentencing. The

United States reserves its full right of allocution pursuant to Rule 32(c)(3)(D) of the Federal

Rules of Criminal Procedure.

The Defendant further understands that the sentence to be imposed upon the Defendant

will be determined solely by the sentencing judge.   The United States cannot and does not make

any promise or representation as to what sentence the Defendant will receive.

(d) <u>Non-binding</u>:  It is the Court's duty to impose sentence.  The Court is not a party to

the above plea agreement.  Any sentence recommendation by the United States does not bind the

Court, and the Court may impose a more severe or less severe sentence than that recommended.

<u>WITHDRAWAL OF GUILTY PLEA NOT ALLOWED</u>

If the Court decides not to give the recommended sentence, or decides that the

recommended sentence is not within the guidelines range, the Defendant may not withdraw the

plea of guilty.

<u>FAMILIARITY WITH CHARGES</u>

The Defendant is aware of the charges, and has discussed the charges and possible

defenses with counsel.  The Defendant is fully aware of the elements of each count.

<u>ACKNOWLEDGMENT OF GUILT</u>

The Defendant is pleading guilty to the charges described above because the Defendant is

in fact guilty and for no other reason.

## COOPERATION - IN GENERAL

The Defendant will cooperate fully with the United States and with any federal, state or local law enforcement or regulatory agency designated by the United States Attorney, including, but not limited to, the Securities and Exchange Commission. This cooperation will include, but is not limited to, the following:

(a)   Defendant agrees to be fully debriefed and to attend all meetings at which his presence is requested by the United States, concerning his participation in and knowledge of all criminal activities.

(b)   Defendant waives all claims of attorney-client privilege and agrees to furnish to the United States all documents and other material that may be relevant to the investigation and that are in Defendant's possession or control, except privileged communications relating to the investigation by the United States, and waives his right to move to suppress evidence or raise any other Fourth or Fifth Amendment claims, and waives his right to any further discovery from the government.

(c)   Defendant agrees not to reveal his cooperation, or any information derived therefrom to any third party without prior consent of the United States, and to instruct his attorneys to do the same.

(d)   Defendant agrees to testify at any proceeding in the Northern District of Alabama or elsewhere as requested by the United States.

(e)   Defendant consents to adjournments of his sentence as requested by the United States and agrees that his obligations under this agreement continue until the United States determines that his cooperation is concluded.

## WAIVER OF CERTAIN CONSTITUTIONAL RIGHTS

The Defendant understands that by pleading guilty, the following constitutional rights will be relinquished: the right to be indicted by a grand jury, if proceeding by information; the right to plead not guilty; the right to be tried by a jury or, if the Defendant wishes and with the consent of the United States, to be tried by a judge. At that trial, the Defendant would have the right to an attorney and, if the Defendant could not afford an attorney, the Court would appoint

one to represent the Defendant. The Defendant would have the right to assist in the selection of the jury. During the trial, the Defendant would be presumed innocent and a jury would be instructed that the burden of proof is on the United States to prove the Defendant guilty beyond a reasonable doubt and by a unanimous verdict. The Defendant would have the right to confront and cross-examine witnesses against the Defendant. If desired, the Defendant could testify on his own behalf and present witnesses in his own defense. On the other hand, if the Defendant did not wish to testify, that fact could not be used against him and the jury would be so instructed. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal that verdict to determine if any errors had been committed during trial that would require either a new trial or a dismissal of the charges.

By pleading guilty, the Defendant will be giving up all of these rights. By pleading guilty, the Defendant may be required to answer questions posed to him by the Court both about the rights that the Defendant will be giving up and the factual basis for the Defendant's plea. Any statements made by the Defendant during such a hearing are not, in any civil or criminal proceeding, admissible against Defendant except as provided Rule 11(e)(6) of the *Federal Rules of Criminal Procedure.*

## Rule 11(e)(6) of the *Federal Rules of Criminal Procedure*

The Defendant knowingly and expressly waives all of the rights afforded Defendant pursuant to the provisions of Rule 11(e)(6) of the *Federal Rules of Criminal Procedure* and Section 1B1.8(a) of the United States Sentencing Guidelines in the event, and only in the event, that, after he enters a plea of guilty pursuant to this agreement, the Defendant then moves to withdraw his plea of guilty and the court grants his motion. In that event, the following shall be admissible against the Defendant:

(a)    Plea of guilty which is later withdrawn or which the Defendant seeks to withdraw;

(b)    Any statement made in the course of any proceeding under Rule 11 regarding said plea of guilty;

(c)    Any statement made in the course of plea discussions with an attorney or agent for the United States which result in a plea of guilty later withdrawn.

The parties expressly agree that, if the court rejects this plea agreement, the above waiver will not apply and the Defendant will have all the rights and protections afforded him by Rule 11(e)(6).

## WAIVER OF RIGHTS TO APPEAL AND COLLATERAL ATTACK

Defendant is aware that his sentence will be imposed in accordance with the United States Sentencing Commission's *Guidelines Manual.* Defendant nonetheless acknowledges and agrees that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense(s) to which Defendant pleads guilty. Defendant is aware that Title 18, United States Code, Section 3742, affords a defendant the right to appeal the sentence imposed. Knowing that, Defendant waives the right to appeal his sentence or the manner in which it was determined on the grounds set forth in Title 18, United States Code, Section 3742, or any other grounds, except that Defendant may appeal a sentence imposed above the statutory maximum or an upward departure from the Sentencing Guidelines, other than a departure requested by the United States. This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b).

In agreeing to this waiver, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the

9

Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence Defendant will receive. Realizing the uncertainty in estimating what sentence Defendant will ultimately receive, Defendant knowingly waives the right to appeal the sentence in exchange for the concessions made by the United States in this plea agreement.

Defendant's right to file a motion attacking his sentence pursuant to 28 U.S.C. § 2255 has also been explained to him and he understands that right. As a part of this plea agreement, Defendant waives his right to challenge his conviction and sentence pursuant to 28 U.S.C. § 2255.

## Acknowledgment

I hereby knowingly, intelligently, and voluntarily waive the rights to appeal or collaterally attack the sentence as set forth above.

_____
Defendant's Signature

## BANKRUPTCY WAIVER

Defendant agrees not to attempt to avoid paying any fine or restitution imposed by the Court through any proceeding pursuant to the United States Bankruptcy Code. Defendant waives all rights, if any, to obtain discharge or to delay payment of any fine or restitution obligation or alter the time for payment by filing a petition pursuant to the Bankruptcy Code. Defendant stipulates that enforcement of any fine or restitution obligation by the United States is not barred or affected by the automatic stay provisions of the United States Bankruptcy Code (Title 11, United States Code, Section 362), and that enforcement of any fine or restitution obligation by the United States is a valid exercise of its police or regulatory power within the meaning of Title

10

11, United States Code, Section 362(b). Defendant stipulates and agrees not to institute or participate in any proceeding to interfere with, alter, or bar enforcement of any fine or restitution obligation pursuant to the automatic stay or other provision of the Bankruptcy Code in any case filed by Defendant or his creditors. Upon request of the United States, Defendant will execute an order or stipulation granting the United States relief from the automatic stay or other Bankruptcy Code provisions in order to enforce any fine or restitution obligation. Defendant stipulates that any fine or restitution obligation imposed by the Court is not dischargeable pursuant to Title 11, United States Code, Section 523 in any case commenced by Defendant or his creditors pursuant to the Bankruptcy Code. Defendant's waivers and stipulations or agreements set forth above are made in exchange for the United States' concessions set forth in this agreement.

## COUNSEL

The Defendant has discussed this case at length with Defendant's counsel. The Defendant is satisfied with counsel's investigation of the case, exploration of possible defenses, advice and other representation.

## OTHER DISTRICTS AND JURISDICTIONS

This document **DOES NOT BIND** any other United States Attorney in any other district, and it in no way limits, binds, or otherwise affects the rights, powers, duties or obligations of any state or local law enforcement agency, administrative or regulatory authorities, civil or administrative enforcement, collection, bankruptcy, adversary proceedings or suits which have been or may be filed by any governmental entity.

## TAX PROCEEDINGS

Unless otherwise specified herein, this document in no way applies to or limits any pending or prospective proceedings, related to the Defendant's tax liabilities, if any.

## BREACH OF AGREEMENT

In the event either party believes the other has failed to fulfill any obligations under this agreement, then the complaining party shall, in its discretion, have the option of petitioning the Court to be relieved of its obligations herein. Whether or not a party has completely fulfilled all of its obligations under this agreement shall be determined by the Court in an appropriate proceeding at which any disclosures and documents provided by either party shall be admissible and at which the complaining party shall be required to establish any breach by a preponderance of the evidence. The Defendant hereby WAIVES all rights pursuant to Rule 32(e), *Federal Rules of Criminal Procedure*, to withdraw from Defendant's guilty plea and this agreement, save and except for the limited reasons outlined above in this paragraph.

In the event that the Defendant, after entry of a plea of guilty, unsuccessfully attempts to withdraw his plea of guilty, the United States may continue to enforce the agreement but will no longer be bound by any provision in this agreement regarding acceptance of responsibility. This provision will not have any continued vitality if it is determined by the Court that the United States acted in bad faith to bring about the attempted withdrawal of plea.

## COMPETENCE

The Defendant has not had any drugs, medication or alcohol within the past 48 hours except as stated hereafter, and is competent to enter the plea agreement stated above.

## COMPLETE AGREEMENT

12

Other than what is contained in this document, NO PROMISES, OR REPRESENTATIONS HAVE BEEN MADE TO THE DEFENDANT BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED, TO INDUCE THE DEFENDANT TO PLEAD GUILTY. This document represents the sole agreement and understanding between the Defendant and the United States, and no other agreement will be entered into unless memorialized in writing and signed by all parties. To become effective, this agreement must be signed by all signatories listed below.

## ACKNOWLEDGMENTS

1.    I have READ this document, DISCUSSED it with my attorney, and UNDERSTAND and AGREE with all its provisions both individually and totally.


_____                    _____
        DATE                               MALCOLM MCVAY
                                           Defendant


2.    I have discussed this case with the Defendant in detail and have advised the Defendant of the Defendant's rights and all possible defenses. The Defendant has conveyed to me that the Defendant understands this document and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case. I concur in the entry of the plea as indicated above and on the terms and conditions set forth herein.


_____                    _____
        DATE                               J. DON FOSTER
                                           Counsel for Defendant


3.    I have reviewed this document and agree to its provisions.


_____                    _____
ALICE H. MARTIN                            JOSHUA R. HOCHBERG

13

United States Attorney
Northern District of Alabama

Chief, Fraud Section
Criminal Division
United States Department of Justice

by:

_____
GEORGE A. MARTIN
Assistant United States Attorney
Northern District of Alabama

_____
RICHARD C. SMITH
Deputy Chief, Fraud Section
Criminal Division
United States Department of Justice

_____
MIKE RASMUSSEN
Assistant United States Attorney
Northern District of Alabama

14

NDAL Press Release Ten.

FOR IMMEDIATE RELEASE
March 19, 2003

## HEALTHSOUTH OFFICER PLEADS GUILTY

Alice H. Martin, United States Attorney for the Northern District of Alabama; Carmen S. Adams, Special Agent in Charge, Federal Bureau of Investigation (FBI); and Richard P. Wessel, District Administrator, Securities and Exchange Commission (SEC), Atlanta Division, announce that WESTON SMITH, age 42, of Hoover, Alabama, has pled guilty today to an Information on charges of conspiracy to commit wire fraud and securities fraud and to filing false certification of financial information with the SEC.

According to Martin, the four-count Information charges that, beginning in or about 1997 and continuing to the present, SMITH and other senior officers of HealthSouth conspired and agreed to commit wire fraud and securities fraud by making false statements in financial filings required to be made to the SEC and to falsify books and records and accounts of HealthSouth. The purpose of the conspiracy was for SMITH and others to fraudulently enrich themselves by inflating artificially HealthSouth's publicly reported earnings and financial condition.

"Today's Information confirms that swift action by law enforcement will be taken against those who exploit financial information for personal profit at the expense of corporate investors," said Martin. "Count Three of the Information is believed to be the first criminal charge in the country brought under the certification requirements contained in Sarbanes/Oxley, an important tool in fighting corporate fraud."

SMITH was released on $500 bond; he could receive a maximum of years in prison and a fine of up to $ . Sentencing is scheduled for , at , before United States District Judge Robert B. Propst.

This case was investigated by Special Agents of the Federal Bureau of Investigation-Birmingham Field Office with assistance from the SEC, Atlanta District-Enforcement Division. The prosecution is being handled by attorneys with the United States Attorney's Office and the Department of Justice Fraud Section.

The investigation is active and ongoing and additional charges are expected to be filed.

- END -

Back to Northern District of Alabama Main Page